**Sabrina BOWMAN, Appellant**

v.

**SUNOCO, INC., Appellee.**

Superior Court of Pennsylvania.

Argued June 10, 2009.

Filed Dec. 16, 2009.

Frances M. Minnis, Philadelphia, for appellant.

Henry F. Reichner, Philadelphia, for appellee.

BEFORE: STEVENS, KLEIN, and KELLY, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the order entered in the Court of Common Pleas of Philadelphia County granting a Motion for Judgment on the Pleadings filed by Defendant/Appellee, Sunoco, Inc. and dismissing Plaintiff/Appellant Sabrina Bowman's negligence claim for injuries she sustained while working as a private security guard on Sunoco property. Specifically, the court agreed with Sunoco's Affirmative

Defense that Bowman, by signing a Worker's Compensation Disclaimer in exchange for her employment with Allied Barton Security Services, had waived her right to file claims against clients of Allied Barton for damages otherwise covered by workers' compensation. Herein, Bowman contends that such a release is contrary to public policy and, therefore, unenforceable. We affirm.

¶ 2 The trial court has aptly summarized the factual and procedural history as follows:

The Plaintiff alleges to have been seriously injured when she tripped, slipped, or fell on snow or ice that the Defendant negligently allowed to accumulate on the ground at its refinery located at 7801 Mingo Road in the City of Philadelphia. Complaint ¶ 3 and 7 (Dec 19 2005). Plaintiff alleges that this incident occurred in the course and scope of her employment as a security officer for Allied Barton Security wherein she had been assigned to provide security for the Defendant's refinery located at Mingo Road. Complaint ¶ 5 and 6.

The Defendant filed an Answer and New Matter and its New Matter contained a paragraph 21 wherein it argued that:

Bowman's claims are barred by the doctrine of waiver, as she executed a "Workers' Comp Disclaimer," on November 23, 2004, in which she waived and forever released her rights to make a claim, commence a lawsuit or recover damages from or against Sunoco for the injuries alleged herein. See "Workers' Comp Disclaimer" dated November 23, 2004, attached hereto as **Exhibit 1.**

The "Workers' Comp Disclaimer" attached as Exhibit 1 to the Defendant's Answer with New Matter reads as follows:

**Worker[s'] Comp Disclaimer**
**Payment on Work–Related Injuries**

I understand that state Workers' Compensation statutes cover work-related injuries that may be sustained by me. If I am injured on the job, I understand that I am required to notify my manager immediately. The manager will inform me of my state's Workers' Compensation law as it pertains to seeking medical treatment. This is to assure that reasonable medical treatment for an injury will be paid for by Allied Workers' Compensation insurance.

As a result, and in consideration of Allied Security offering me employment, I hereby waive and forever release any and all rights I may have to:

— make a claim, or

— commence a lawsuit, or

— recover damages or losses

from or against any customer (and the employees of any customer) of Allied Security to which I may be assigned, arising from or related to injuries which are covered under the Workers' Compensation statutes.

The Plaintiff admits that she failed to respond to the Defendant's Amended Answer and New Matter. Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings ¶ 14 (4.21.08). However, the Plaintiff did respond to the Defendant's Motion for Judgment on the Pleadings. In her response, she argues that she was not required to respond to the Defendant's New Matter. She also argues that the "Workers' Comp Disclaimer" at issue was void as it violated public policy and or the pla[i]n language of the Workers' Compensation Statute. *Id.* § II Counterstatement of the Question Involved. In her response, the Plaintiff did not

argue duress, contract of adhesion, or fraud. No factual issue was presented as to whether the Plaintiff understood or misunderstood the disclaimer when she signed.

\* \* \*

[The trial court] granted the Defendant's Motion for Judgment on the Pleadings because it does not believe that the "Workers' Comp Disclaimer" at issue in the case *sub judice* is null and void based on public policy or Pennsylvania Worker's Compensation Act.

Trial Court Opinion dated 8/13/06 at 1–2, 3.

 ¶ 3 Preliminarily, we recognize our scope and standard of review when presented with a challenge involving a motion for judgment on the pleadings:

[A]ppellate review of a trial court's decision to grant or deny judgment on the pleadings is limited to determining whether the trial court committed an error of law or whether there were facts presented which warrant a jury trial. In conducting this review, we look only to the pleadings and any documents properly attached thereto. Judgment on the pleadings is proper only where the pleadings evidence that there are no material facts in dispute such that a trial by jury would be unnecessary.

In passing on a challenge to the sustaining of a motion for judgment on the pleadings, our standard of review is limited. We must accept as true all well pleaded statements of fact of the party against whom the motion is granted and consider against him only those facts that he specifically admits. We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*John T. Gallaher Timber Transfer v. Hamilton,* 932 A.2d 963, 967 (Pa.Super.2007).

¶ 4 In this case, we are asked to determine the enforceability of a contractual provision. As the issue before us involves a question of law, we exercise plenary review over the trial court's decision. *D & H Distributing Co., Inc. v. National Union Fire Ins. Co.,* 817 A.2d 1164 (Pa.Super.2003), appeal granted, 574 Pa. 760, 831 A.2d 599 (2003) (contract construction is a question of law and appellate court review is plenary).

 ¶ 5 It is well-settled that contracts that violate public policy are unenforceable. In determining whether a contractual agreement violates public policy, courts must remain mindful that "public policy is more than a vague goal which may be used to circumvent the plain meaning of the contract." *Hall v. Amica Mut. Ins. Co.,* 538 Pa. 337, 347, 648 A.2d 755, 760 (1994). Moreover,

[p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy.... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.

*Id.* at 347–48, 648 A.2d at 760 (citations omitted).

 ¶ 6 Appellant argues that the Workers' Compensation Disclaimer/Re-

lease should not bar her third-party action because it improperly waives a cause of action that had not yet accrued and because it goes against other public policy considerations contained the Workers' Compensation Act, 77 P.S. § 1 *et seq,* which, *inter alia,* permits employees to pursue common law actions against third parties for work-related injuries. Finding no public policy violation in the third-party customer release at issue, we disagree.

¶ 7 As this is a case of first impression before this Court, we note initially that other jurisdictions have looked past the "surface appeal" of the same public policy arguments advanced here to find nothing unconscionable about releasing claims against customers for injuries that are already covered by workers' compensation law. *See Horner v. Boston Edison Company,* 45 Mass.App.Ct. 139, 695 N.E.2d 1093 (1998) (holding release signed by applicant in exchange for obtaining security guard job valid and barred suit against employer's client, owner of nuclear power plant, for injuries from fall during patrol); *Edgin v. Entergy Operations, Inc.,* 331 Ark. 162, 961 S.W.2d 724 (1998) (upholding identical release, concluding employee is merely agreeing to waive rights to amounts additional to workers' compensation remedy already provided). The courts acknowledged that such releases given in exchange for employment may reflect the bargaining disadvantage often experienced by the job applicant acting under economic compulsion, and may also reasonably be construed as enabling employers to better attract customers at employee's expense. *Horner, supra. See also Brown v. Soh,* 280 Conn. 494, 909 A.2d 43 (Conn.2006) (distinguishing third

party releases from impermissible employer releases/contracts of adhesion). These facts alone, however, do not render third party releases contrary to public policy considerations contained in the Act because they do not impede the ultimate goal of the Act—to enable an employee hurt at work to receive from his or her employer compensation benefits for all work-related injuries suffered.

¶ 8 We adopt the same rationale in deciding the case *sub judice.* As in the cases cited *supra,* Appellant agreed to extinguish only her right under the Act to sue third party customers for amounts additional to workers compensation benefits already received for workplace injuries. The release thus did not attempt to shield employer Allied Barton from liability under the Act or deprive Appellant of compensation for work-related harm.

¶ 9 Had Allied Barton sought to contract away its own statutory obligation to cover employees for workplace injuries, it would have clearly undermined the spirit and intent of the entire Workers' Compensation Act, as well as Section 204(a) of the Act (77 P.S. § 71(a)) specifically.[1] *See Inman v. Nationwide Mutual Ins. Co.,* 433 Pa.Super. 534, 641 A.2d 329, 331 (1994) (acknowledging that Section 204(a) was drafted to prohibit as against public policy "an employer from agreeing with his employee to hold employer harmless for any future injury the employee may suffer.") (emphasis deleted). Appellant asks us to apply Section 204(a) to releases of third party customers as well, but we discern no reason under either statutory or decisional law to do so, because third party releases simply do not divest employees of their

---

1. Section 204(a) provides in pertinent part:
 No agreement, composition, or release of damages made before the date of any injury shall be valid or shall bar a claim for damages resulting therefrom; and any such agreement is declared to be against the public policy of this Commonwealth.
 77 P.S. § 71(a).

workers' compensation rights as do employer releases.

¶ 10 Likewise unavailing is Appellant's argument that a third party release contravenes an employer's right to subrogation under Section 319 of the Act (77 P.S. § 671). Section 319 provides in pertinent part:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, ... against such third party to the extent of the compensation payable under this article by the employer.

77 P.S. § 671. While an employer's right to subrogation is statutorily absolute, *See Kidd–Parker v. W.C.A.B. (Phila. Sch. Dist.)*, 907 A.2d 33, 37 (Pa.Cmwlth.2006), *appeal denied*, 591 Pa. 676, 916 A.2d 1104 (2007), (*quoting Winfree v. Philadelphia Elec. Co.*, 520 Pa. 392, 554 A.2d 485, 487 (1989)), the employer may choose to abrogate the right. *id. see also United Parcel Service v. Hohider*, 954 A.2d 13 (Pa.Super.2008) (collecting cases). Allied Barton was therefore free under the Act to effectively forego its subrogation rights by contractually releasing third party customers from liability for compensable work-related injuries to Allied Barton security guards.

¶ 11 Based on the foregoing review of the Pennsylvania Workers' Compensation Act as well as the decisions of other jurisdictions which have addressed the identical issue before us, we conclude that the third party release in question undermines no public policy considerations contained within the Act's provisions. Accordingly, Appellant's claim must fail.

¶ 12 Order affirmed.