65 A.3d 901

**Sabrina BOWMAN, Appellant**

**v.**

**SUNOCO, INC., Appellee.**

Supreme Court of Pennsylvania.

Argued March 6, 2012.

Decided April 25, 2013.

Frances M. Minnis, Oxman, Goodstadt & Kunitz, P.C., for Appellant.

Henry Falkner Reichner, Reed Smith LLP, for Appellee.

Before: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice EAKIN.

Sabrina Bowman appeals from the Superior Court's order affirming the Court of Common Pleas of Philadelphia County,

which granted Sunoco's motion for judgment on the pleadings and dismissed appellant's negligence claim. We affirm.

Appellant was employed as a private security guard with Allied Barton Security Services. In exchange for employment, she signed a Workers' Compensation Disclaimer whereby she waived her right to sue Allied's clients for damages related to injuries covered under the Workers' Compensation Act.[1] 77 P.S. § 1 *et seq.* Appellant was later injured when she fell on snow or ice while providing security at one of appellee's refineries; she filed a workers' compensation claim and received benefits.[2] Thereafter, appellant filed a negligence claim against appellee, alleging its failure to maintain safe conditions caused her injury. After discovery revealed the disclaimer and appellant's receipt of benefits, appellee filed a motion for judgment on the pleadings, stating appellant's claim was barred by the disclaimer.

Appellant argued the disclaimer was void as against public policy; specifically, she argued the disclaimer violated the public policy considerations in § 204(a) of the Workers' Compensation Act. She also asserted the disclaimer improperly waived a cause of action not yet accrued. Section 204(a) provides: "No agreement, composition, or release of damages

1. The disclaimer stated:
 I understand that state Workers' Compensation statutes cover work–related injuries that may be sustained by me. If I am injured on the job, I understand that I am required to notify my manager immediately. The manager will inform me of my state's Workers' Compensation law as it pertains to seeking medical treatment. This is to assure that reasonable medical treatment for an injury will be paid for by Allied Workers' Compensation insurance.
 As a result, and in consideration of Allied Security offering me employment, I hereby waive and forever release any and all rights I may have to:
 - make a claim, or
 - commence a lawsuit, or
 - recover damages or losses
 from or against any customer (and the employees of any customer) of Allied Security to which I may be assigned, arising from or related to injuries which are covered under the Workers' Compensation statutes.
 Workers' Comp[ensation] Disclaimer, 11/23/04, at 1.

2. *See* Compromise and Release Agreement, 12/2/05.

made before the date of any injury shall be valid or shall bar a claim for damages resulting therefrom; and any such agreement is declared to be against the public policy of this Commonwealth." 77 P.S. § 71(a). The trial court found the disclaimer did not violate the public policy articulated in § 204(a), and granted appellee's motion.

The Superior Court affirmed, agreeing the disclaimer did not violate public policy. *Bowman v. Sunoco, Inc.*, 986 A.2d 883 (Pa.Super.2009). The court reasoned appellant waived only her right to sue third-party customers for injuries covered by workers' compensation; the release did not attempt to deprive appellant of her rights under the Act, nor was it an attempt to shield Allied from liability or deprive appellant of compensation for work-related harm. *Id.*, at 887.

The Superior Court found no statutory or case law supporting the application of § 204(a) to third-party customers, and reasoned that third-party releases do not divest employees of workers' compensation rights, as do employer releases. *Id.*, at 887–88. The Superior Court noted other jurisdictions have rejected similar arguments, finding no violation of public policy for releasing claims against customers of employers for injuries covered by workers' compensation laws. *Id.*, at 887. The court also found no merit to appellant's argument that a third-party release contravenes an employer's right to subrogation under § 319 of the Act, 77 P.S. § 671, because an employer may choose to waive that right. *Bowman*, at 888 (citing *Kidd–Parker v. Workers' Compensation Appeal Board (Philadelphia School District)*, 907 A.2d 33, 37 (Pa.Cmwlth. 2006)). Accordingly, the court concluded the third-party release did not undermine public policy considerations in § 204(a) of the Act. *Id.*

We granted allowance of appeal to determine:

Did the Superior Court, in a decision of first impression and of statewide substantial significance, disregard the public policy of the Commonwealth of Pennsylvania and the plain meaning of the [Pennsylvania Workers'] Compensation Act when it decided that a third party release in the form of a

"Worker's Comp Disclaimer" signed in consideration for employment and receipt of compensation benefits, which further required the waiver and eternal release any [sic] and all rights to make a claim, commence a lawsuit, or recover damages or losses is not void against public policy when the language of the disclaimer openly conflicts with the language of section 204(a) of the Pennsylvania Workers['] Compensation Act which expressly renders such agreements as void against public policy?

*Bowman v. Sunoco, Inc.,* 610 Pa. 7, 17 A.3d 920–21 (2011) (*per curiam* ).

Our review of the Commonwealth Court's decision granting the [appellee's] motion for judgment on the pleadings is limited to whether the court committed an error of law or whether unresolved questions of material fact remained. In reviewing a grant of judgment on the pleadings[,] this Court regards all of the non-moving party's well-pleaded allegations as true, and may consider against that party only those allegations that it has admitted. Since the Commonwealth Court's decision embodies conclusions of law, our scope of review is plenary.

*Pennsylvania Department of Banking v. NCAS of Delaware, LLC,* 596 Pa. 638, 948 A.2d 752, 759 (2008) (internal citations omitted).

Stripped of its verbosity, appellant's argument is that the disclaimer she signed as a condition of her employment violates the plain language of the first sentence of § 204(a) of the Workers' Compensation Act; that section provides:

(a) *No agreement, composition, or release of damages made before the date of any injury shall be valid or shall bar a claim for damages resulting therefrom; and any such agreement is declared to be against the public policy of this Commonwealth.* The receipt of benefits from any association, society, or fund shall not bar the recovery of damages by action at law, nor the recovery of compensation under article three hereof; and any release executed in consideration of such benefits shall be void: Provided, however, That if the employee receives unemployment compensation

benefits, such amount or amounts so received shall be credited against the amount of the award made under the provisions of sections 108 and 306, except for benefits payable under section 306(c) or 307. Fifty per centum of the benefits commonly characterized as "old age" benefits under the Social Security Act (49 Stat. 620, 42 U.S.C. § 301 *et seq.*) shall also be credited against the amount of the payments made under sections 108 and 306, except for benefits payable under section 306(c): Provided, however, That the Social Security offset shall not apply if old age Social Security benefits were received prior to the compensable injury. The severance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employee shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c). The employer shall provide the insurer with proper authorization to secure the amount which the employee is receiving under the Social Security Act.

77 P.S. § 71(a) (footnotes omitted; emphasis added). Appellant asserts the first sentence of § 204(a) is plain and unambiguous, and when the statutory language is clear and free from all ambiguity, a court must apply the letter of the statute and not pursue its spirit through principles of statutory construction. *See* 1 Pa.C.S. § 1921(b). Therefore, she claims, we must invalidate the disclaimer she signed. Appellant contends the Superior Court impermissibly added language to the section by interpreting this section not to invalidate waivers of causes of action against third parties. Appellant also asserts the disclaimer contravenes the subrogation clause of § 319,[3] reasoning it is absurd for an employer to forego an opportuni-

---

**3.** Section 319 provides, in relevant part:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employee, . . . against such third party to the extent of the compensation payable under this article by the employer[.]

77 P.S. § 671.

ty to recoup expenses spent on an injured worker, and insisting Allied's argument clashes with the Act's economic public policy.

Appellee responds that § 204(a) applies only to an employer's attempts to limit its own liability; it does not apply to releases concerning third parties. Appellee notes courts have recognized § 204(a) only prohibits an agreement to hold the *employer* harmless for any future injury. *See, e.g., Inman v. Nationwide Mutual Insurance Company,* 433 Pa.Super. 534, 641 A.2d 329, 331 (1994) ("Section [204(a)] prohibits, as against public policy, an *employer* from agreeing with his employee to hold *employer* harmless for any future injury the employee may suffer.") (emphasis changed). As appellant was fully compensated for injuries covered by the Act, unaffected by the disclaimer, appellee maintains the public policy behind the Act was not impugned. Appellee points out appellant never argued the disclaimer was a contract of adhesion, the result of mistake, duress, or fraud, was ambiguous, or lacked consideration.

As appellant presents a plain language argument, the initial duty of this Court is to determine whether the relevant language of § 204(a) is ambiguous. *See* 1 Pa.C.S. § 1921(b). Words of a statute are ambiguous when there are at least two reasonable interpretations of the text under review. *Delaware County v. First Union Corporation,* 605 Pa. 547, 992 A.2d 112, 118 (2010); *Barasch v. Pennsylvania Public Utility Commission,* 516 Pa. 142, 532 A.2d 325, 332 (1987). If we determine the statute is unambiguous, we must apply it directly as written. *See* 1 Pa.C.S. § 1921(b). However, if we deem the statutory language ambiguous, we must then ascertain the General Assembly's intent by statutory analysis, wherein we may consider numerous relevant factors. *See* 1 Pa.C.S. § 1921(c). In determining legislative intent, the language of every section of a statute must be read in conjunction and construed with reference to the entire statute. *E.D.B. v. Clair,* 605 Pa. 73, 987 A.2d 681, 684 (2009). Further, we may consider the language of the Act within its historic context, as the Act has undergone significant amendment to

its substantive and procedural provisions since its enactment in 1915; such analysis is particularly critical when construing legislation, such as the Workers' Compensation Act, which creates a highly structured balancing of competing interests. *See Department of Labor and Industry, Bureau of Workers' Compensation v. Workers' Compensation Appeal Board (Excelsior Insurance)*, 58 A.3d 18, 27 (Pa.2012) ("The Workers' Compensation Act balances the competing interests of employers and employees.") (citation omitted).

Appellant's plain language argument has immediate initial appeal, for the first sentence of § 204(a) speaks broadly of "agreements" and "release of damages." However, the great bulk of § 204(a) addresses specific offsets to the *employer's* obligation under the Act, and not to any duty owed by a third party. Section 204(a) does not explicitly address the latter— an employee who waives the right to sue the client for injuries covered by workers' compensation benefits.

■ Section 204(a) is comprised of five sentences. The first establishes the public policy on which appellant bases her argument. The last concerns the duty of the employee to provide Social Security benefit information to the insurer. The remainder of § 204(a) discusses various sources from which an employee may receive funds, and the effect of that receipt on the employee's right to workers' compensation. Specifically, the first part of the second sentence establishes that an employee's "receipt of benefits from any association, society, or fund shall not bar the recovery of damages by action at law, nor the recovery of compensation under article three hereof...." 77 P.S. § 71(a). Thus, benefits received from any association, society, or fund are not considered in determining the compensation an employee receives from an employer for a work–related injury, which is now exclusively workers' compensation benefits.[4] The remainder of the sec-

4. As discussed more fully below, the Workers' Compensation Act was not always the exclusive means by which an employee received compensation from an employer for a work-related injury. When the language regarding "the recovery of damages from any action at law" was enacted, an employee who had not entered into a workers' com-

ond sentence begins the discussion that also encompasses sentences three and four regarding benefits such as unemployment compensation benefits, Social Security benefits, and employer-funded severance and pension benefits, which are credited against the amount of an employee's workers' compensation award.

Thus, majority of § 204(a) speaks directly and solely to employers and employees. Therefore, this Court is not convinced § 204(a) is clear and unambiguous with respect to appellant's issue. It is logical that in identifying "agreements" and "release of damages" in § 204(a), the legislature intended these terms to pertain to the employer's obligations to the employee, not to the tortious liability of third parties to the employee. However, the legislation does not make this purpose explicit. As the statute is not free from ambiguity, a more thorough statutory analysis is required.

If one looks at Article II of the Act as a whole and its relation to the entire Act, it is apparent § 204 is only one of five sections of an Article entitled "Damages by Action at Law." Immediately, one is struck by the curiosity that a section of the Act is devoted to "Damages by Action at Law," when the Act provides for an *exclusive* and comprehensive administrative scheme to provide for medical expenses and a specified, but limited, schedule of compensation for workers injured on the job. *See, e.g., Sporio v. Workmen's Compensation Appeal Board (Songer Construction)*, 553 Pa.44, 717 A.2d 525, 530 (1998) (citation omitted) ("The Act substitutes a quick and inexpensive scheme to provide compensation for work-related injuries in place of the common law process where the employee must sue the appropriate parties for damages. Employers pay benefits at a set rate and they are immune from common-law liability."); *Markle v. Workmen's Compensation Appeal Board (Caterpillar Tractor Company)*, 541 Pa.148, 661 A.2d 1355, 1357 (1995) ("Worker's Compensation can best be

pensation agreement with his employer could recover damages from the employer for a work-related injury through an action at law. *See* Sections 204 and 301 of the Act of June 2, 1915, P.L. 736, *infra*. Thus, this language is properly interpreted as a remnant of this previous dual-recovery system with no current applicability.

understood as a replacement of common law tort actions between employees and employers as a means for obtaining compensation of injuries.").

However, the Act did not always provide for an exclusive remedy. Rather, until the Act of December 5, 1974, P.L. 782, No. 263, the compensation provisions set forth in Article III were elective, although a rebuttable presumption existed that the employer and its employees had accepted this compensation scheme. *See, e.g., McKinney Manufacturing Corporation v. Workmen's Compensation Appeal Board,* 9 Pa.Cmwlth. 79, 305 A.2d 59, 61 (1973) (interpreting prior version of Act and noting, "Often forgotten or overlooked is the fundamental premise that when the employer and the employee accept the provisions of the Act[,] their relations become contractual and the employee receives the right to compensation under the statute."); *see also Fonner v. Shandon, Inc.,* 555 Pa. 370, 724 A.2d 903, 904 (1999) (observing 1974 amendments made it mandatory for employers to provide workers' compensation coverage).

Indeed, Article III, as enacted in 1915, was entitled "Elective Compensation." Section 301 of the Act, as originally enacted, provided in relevant part:

> When the employer and employee shall by agreement ... accept the provisions of article three of this act, compensation for personal injury to, or for the death of, such employee, by an accident, in the course of his employment, shall be made in all cases by the employer, without regard to negligence, according to the schedule contained in sections three hundred and six and three hundred and seven of this article....

Section 301 of the Act of June 2, 1915, P.L. 736. Article II was also part of the original 1915 legislation. At that time, § 204 provided:

> No agreement, composition, or release of damages made before the *happening* of any *accident, except the agreement defined in article three of this act,* shall be valid or shall bar a claim for damages *for the injury* resulting therefrom; and

any such agreement, *other than that defined in article three herein,* is declared to be against the public policy of this Commonwealth. The receipt of benefits from any association, society, or fund shall not bar the recovery of damages by action at law, nor the recovery of compensation under article three hereof; and any release executed in consideration of such benefits shall be void.

Section 204 of the Act of June 2, 1915, P.L. 736 (emphasis added to denote portions differing from present § 204(a)). Thus, the Act, as originally conceived, established a dual system of recovery for injured employees against their employers—principally through the Article III schedule, but, barring that, through an action at law under Article II.

Article II remains in the Act, although modified considerably. Section 204(a) now contains a series of provisions pertaining only to offsets enjoyed by the employer to be applied to specific compensation benefits an employer is obligated to pay under §§ 108 or 306 of the Act. In addition, § 305(d) explicitly provides an action at law pursuant to Article II continues to be available to any employee whose employer is either uninsured or not an approved self-insurer. *See* 77 P.S. § 501(d) ("When any employer fails to secure the payment of compensation under this act as provided in sections 305 and 305.2, the injured employee or his dependents may proceed either under this act or in a suit for damages at law as provided by article II.").[5]

Based on this history, we determine the legislature originally intended and presently intends the provisions of § 204(a) to apply only to agreements to bar a claim against an employer, and not to the circumstances of the case *sub judice,* as argued by appellant. Moreover, because the Act once provided for a dual system of recovery, which made it a violation of public policy for an employer to avoid *both* recov-

5. Although appellant argues § 303(b) preserves an injured employee's right to bring an action against a third party, this section is not mandatory and does not specifically foreclose the employee's waiver of such right. *See* 77 P.S. § 481(b) (employee "may bring [an] action at law against such third party"). Moreover, unlike § 305(d), § 303(b) makes no mention of § 204(a) or Article II. *See id.*

ery tracks, and continues to provide for an action at law when the employer is uninsured, we conclude public policy is not violated where, as here, the employee is absolutely covered under one of those two tracks, namely, the compensation scheme provided by Article III.

We also cannot agree with appellant's argument that the voluntary waiver of Allied's subrogation rights violates the purposes underlying the right to subrogation—(1) to prevent double-recovery by a claimant for the same injury; (2) to ensure an employer is not required to pay for negligence of a third party; and (3) to prevent a third party from escaping liability for negligent conduct. *Brubacher Excavating, Inc. v. Workers' Compensation Appeal Board (Bridges)*, 575 Pa.168, 835 A.2d 1273, 1277 (2003); *Dale Manufacturing Company v. Bressi*, 491 Pa. 493, 421 A.2d 653, 654 (1980). While the Act provides an employer a right of subrogation, the employer may certainly choose to waive that right. *See Winfree v. Philadelphia Electric Company*, 520 Pa. 392, 554 A.2d 485, 487 (1989) (employer's subrogation rights can be abrogated only by choice). Allied's waiver of subrogation was a business decision affecting only itself—it did nothing to prevent appellant from receiving full and just compensation for her work-related injuries.

Appellant relies on *Henry Shenk Company v. City of Erie*, 352 Pa. 481, 43 A.2d 99 (1945), and *Vaughn v. Didizian*, 436 Pa.Super. 436, 648 A.2d 38 (1994), for her argument the disclaimer is against contract law because it released liability for actions not accrued at the time of the release. However, appellant does not place this concept in the proper context and ignores the important distinction that "[a] long line of Pennsylvania cases has held that a release covers only those matters which may be fairly said to have been within the contemplation of the parties when the release was given." *Restifo v. McDonald*, 426 Pa. 5, 230 A.2d 199, 201 (1967).

Waivers which release liability for actions not accrued at the time of the release are generally only invalid if they involve future actions entirely different than ones contemplat-

ed by the parties at the time of the release. *See Farrell v. Lechmanik, Inc.,* 417 Pa.Super. 172, 611 A.2d 1322, 1324 (1992) (release related to wrongful discharge action against employer did not apply to personal injury action based on negligence of third-party tortfeasor). Both *Shenk* and *Vaughn* involved a waiver that involved actions not anticipated by the waiver or release.

In *Shenk*, the plaintiff brick manufacturing company waived rights to claim damages sustained when the City of Erie made improvements to a drainage ditch. Nearly 30 years later, the defendant asserted that waiver to avoid liability for damages caused by different improvements under a different condemnation. The court ruled the release could not possibly have contemplated or intended a waiver of damages in such an instance. *Shenk,* at 102.

In *Vaughn*, the plaintiff executed a general release of liability from all claims resulting from an automobile accident. The Superior Court, following *Shenk*, held the waiver did not bar the medical malpractice claim against the doctor who performed surgery related to injuries from the accident. *Vaughn,* at 40–41. The court reasoned the release could not have contemplated negligent treatment for the injuries, and thus did not cover the malpractice action. *Id.,* at 41.

In the present case, the *only* actions the disclaimer contemplated were actions that could occur in the future. The purpose of the disclaimer was to release Allied's customers from liability in the event an employee was injured on the job after the disclaimer was signed, which is exactly the basis of appellant's claim. The disclaimer was a condition of employment, and the parties certainly contemplated it would encompass future causes of action—the document's very purpose was to dictate how claims for injuries would be handled.

Pennsylvania law has upheld various releases for claims not yet accrued at the time of the release. *See Buttermore v. Aliquippa Hospital,* 522 Pa. 325, 561 A.2d 733, 735 (1989) (absent allegation of fraud, accident, or mutual mistake, acci-

dent victim who signed release discharging all claims and parties pertaining to accident was barred from bringing action against hospital for allegedly aggravating injuries sustained in accident); *see also Nissley v. Candytown Motorcycle Club, Inc.,* 913 A.2d 887, 891 (Pa.Super.2006) (exculpatory clause of club member's release and indemnification agreement was unambiguous waiver of his right to bring negligence claim against club).

Appellant was not forced to sign the release, and the release did not in any way prevent her from receiving compensation for her work-related injuries as provided by the Act. As the Appeals Court of Massachusetts found in *Horner v. Boston Edison Company,* 45 Mass.App.Ct. 139, 695 N.E.2d 1093 (1998),[6] the disclaimer here "extinguishes only the employee's right to recover additional amounts as a result of a work-related injury for which the employee has already received workers' compensation benefits." *Id.,* at 1095. Similarly, the Supreme Court of Arkansas found, with facts nearly identical to the present case, a similar disclaimer did not violate public policy because it did not indicate the employer was "attempting to escape liability entirely, but [was] instead, attempting to shield its clients from separate tort liability for those injuries that are covered by workers' compensation...." *Edgin v. Entergy Operations, Inc.,* 331 Ark. 162, 961 S.W.2d 724, 727 (1998).

 The Act ensures employers will compensate employees for work-related injuries and that employers cannot contract away liability. The disclaimer was a guarantee to Allied's customers that they would not be responsible for injuries sustained by Allied's employees; it served as a benefit to Allied's customers and in no way affected appellant's right to recover from her employer for work-related injuries as

---

6. The facts of *Horner* are similar to the present case. In *Horner,* the plaintiff was employed as a security guard for an agency and was injured on the property of an agency's customer, a nuclear plant. He received workers' compensation benefits from the agency and sought to recover from the plant for negligence.

provided by § 204(a) of the Act. While appellant may suffer additional injuries for which others may be liable, this release relates only to recovery for injuries covered by the Act, to which appellant bargained away her rights. Accordingly, the order of the Superior Court is affirmed.

Order affirmed; jurisdiction relinquished.

Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE, Justice SAYLOR, Justice TODD and Justice McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion in which Justice McCAFFERY joins.

Justice BAER files a dissenting opinion.

## *CONCURRING OPINION*

Justice SAYLOR.

I join the majority opinion, subject to a modest reservation pertaining to the use of terminology invoking the concept of "double recovery" with regard to subrogation. *See* Majority Opinion, at 41, 65 A.3d at 908–09 (citing *Brubacher Excavating, Inc. v. WCAB (Bridges)*, 575 Pa. 168, 174, 835 A.2d 1273, 1277 (2003)). Although such terminology has been advanced by this Court in discussing an employer's right of subrogation, I remain circumspect about its use in the workers' compensation arena since the benefits involved are partial and discounted, *see DPW v. WCAB (Harvey)*, 605 Pa. 636, 654 n. 16, 993 A.2d 270, 281 n. 16 (2010), and even where an injured employee is able to recover in tort against a third party, such recovery may be substantially diminished via litigation costs and compromise settlements.

Justice McCAFFERY joins this concurring opinion.

## DISSENTING OPINION

Justice BAER.

Section 204(a) of the Workers' Compensation Act,[1] provides, in relevant part: "No agreement, composition, or release of damages made before the date of any injury shall be valid or shall bar a claim for damages resulting therefrom; and any such agreement is declared to be against the public policy of this Commonwealth." In the instant appeal, Appellant, Sabrina Bowman, agreed as a condition of her employment with her employer, Allied Barton Security Services, to

waive and forever release any and all rights I may have to:
- make a claim, or
- commence a lawsuit, or
- recover damages or losses

from or against any customer (and the employees of any customer) of Allied Security to which I may have been assigned, arising from or related to injuries which are covered under the Workers' [sic] Compensation statutes.

Workers' Comp[ensation] Disclaimer, Nov. 23, 2004 at 1.

Despite the clear and unambiguous language of this portion of Section 204(a), the Majority finds that the Disclaimer does not violate this provision because "the legislature originally intended and presently intends the provision of [Section] 204(a) to apply only to agreements to bar a claim against an employer, and not to the circumstances of the case *sub judice* . . . ." Maj. Op. at 40, 65 A.3d at 905. The Majority justifies this holding by foraying into a statutory interpretation analysis of Section 204(a).

I would find that the disclaimer at issue in this case is contemplated and indeed prohibited by the plain language of Section 204(a). Section 204(a) is absolute in its language that "no agreement, composition or release of damages" shall preclude "a claim for damages," and that "any such agreement" is void as against the public policy of the Commonwealth. 77 P.S. § 71(a).

1. 77 P.S. § 71(a).

The General Assembly's broadness in language is particularly telling of the clarity of the statute; there are no exceptions, limitations, or provisos, even in the remaining clauses of Section 204(a). The plain language does not restrain the prohibition to an injury suffered by the employee for which the employer would be solely liable (as the Majority holds). Rather, the plain language is completely consistent with other provisions of the Workers' Compensation Act that specifically permit an employee to sue a negligent third-party for injuries sustained in the normal course of employment.[2] Put simply, within the employer-employee relationship, an employer cannot require an employee to execute a waiver of damages as a condition of the employment.

As this plain language clearly controls in this case, I cannot countenance the Majority's journey into the forbidden land of impermissible statutory construction. *Cf.* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.") Indeed, if there were ever an example of disregarding the plain language of a statute "under the pretext of pursuing its spirit," it is this case.

After rejecting the unambiguous language of Section 204(a) solely because it "speaks broadly," *see* Maj. Op. at 37, 65 A.3d at 906, the Majority goes on a four-page discourse concerning what it believes Section 204(a) actually contemplates; what Article II of the Workers' Compensation Act includes; the history of the Act, dating back to 1915; and even so far as to what Article III of the Workers' Compensation Act *used to* say. *See id.* at 36–41, 65 A.3d at 906–08. Respectfully, but adamantly, Section 1921(b) of our rules of statutory construction should not be discarded so easily, merely because a statutory provision allegedly "speaks broadly."

Accordingly, as mandated by our rules of statutory construction, I would hold that the plain language of Section

---

**2.** "In the event injury or death to an employee is caused by a third party, then such employee ... may bring their action at law against such third party ...." Section 303(b) of the Workers' Compensation Act, 77 P.S. § 481(b).

204(a) prohibits, as against public policy, the disclaimer in the instant case. As the Majority reaches the opposite result, I dissent.