IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alisa Tongg Weiler,                          :
                                             :
                    Appellant                :
                                             :
             v.                              : No. 1303 C.D. 2021
                                             : Submitted: September 23, 2022
Stroud Township Zoning                       :
Hearing Board and                            :
Stroud Township                              :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge


OPINION
BY JUDGE WOJCIK                                    FILED:  August 3, 2023


          Alisa Tongg Weiler (Landowner) appeals from an order of the Monroe
County Court of Common Pleas (trial court) that affirmed the determination of the
Stroud Township Zoning Hearing Board (Board) upholding an enforcement notice
and preventing her from holding wedding ceremonies on her property.  Landowner
contends that the Board erred or abused its discretion by restrictively interpreting the
Stroud Township Zoning Ordinance (Ordinance) to preclude her use; falsely
characterizing and considering a neighbor's irrelevant testimony; and infringing
upon her religious freedoms.  Upon review, we affirm.

# I. Background

Landowner owns property located at 5347 Hickory Circle, Stroud Township (Township), Monroe County (Property), which is improved with a single-family dwelling. The Property is in the Township's S-1 Special and Recreational Zoning District (S-1 District). Landowner lives at the Property with her family. Landowner, who is an ordained minister and registered wedding officiant, also conducts weddings and other ceremonies at her Property.

Schedule 27-I of the Ordinance allows the following uses in the S-1 District as permitted, special, or conditional: Dwelling, single-family; clustering, single-family; agriculture crops production; animal husbandry; agricultural services; flea markets (private); cemetery; bed and breakfast; camps and recreational vehicle parks; sporting and recreational camps; and membership lodge houses. Reproduced Record (R.R.) at 233a-34a. Section 27-402.4(A) of the Ordinance prohibits "any use not permitted . . . within a District." R.R. at 229a. Omitted from the list is "personal services," which appears only in the commercial districts as a permitted or conditional use in Section 27-202 of the Ordinance. R.R. at 226a. Section 27-508 permits accessory uses "customarily incidental to the permitted use" by right. R.R. at 231a.

On September 30, 2020, the Township zoning officer issued an enforcement notice to Landowner alleging that she was violating the Ordinance by operating a "personal service/wedding venue" on her Property. Landowner appealed the notice to the Board.

2

The Board held a public hearing on January 6, 2021.[1] Landowner testified and presented evidence in support of her use. Landowner argued that the notice should be set aside because her use of the Property was not prohibited under the Ordinance and qualified as an accessory use. Alternatively, Landowner argued that, if the use was prohibited, the Ordinance unduly burdened her religious freedom in violation of the Religious Land Use and Institutionalized Person Act of 2000, 42 U.S.C. §§2000cc - 2000cc-5 (RLUIPA). Landowner's adjoining neighbor, Roberta Marsh (Neighbor), appeared at the hearing and testified in support of the enforcement notice and in opposition to Landowner's use. Based on the testimony and evidence presented, the Board found the following relevant facts.

Landowner has resided at the Property with her family since purchasing it in 2005. The Property is approximately one acre and is served by an on-site water well and sewage system. In addition to the single-family residence, the Property features a 16-foot-by-30-foot single-roof pitch shed, which Landowner constructed after acquiring a permit in 2019 for residential use. Board Op., 3/12/21, Findings of Fact (F.F.) Nos. 4-6.

Landowner is an ordained minister in good standing through the Universal Brotherhood Movement, Inc. and a registered marriage officiant in the City of New York. She performs marriages and other services required by clergy. She is also a certified Life-Cycle Celebrant specializing in creating weddings and other special ceremonies. Since 2012, she has conducted approximately 600 weddings, 100 of which have been held on her Property in an area she refers to as

___

[1] Due to the COVID-19 restrictions, the hearing room capacity was limited to 10 persons. R.R. at 251a. Present at the hearing were the court reporter; three Board members; the Board solicitor; the zoning officer; Township zoning office attorney; two neighbors; the Township clerk; Landowner and her attorney.

3

the "Promise Ridge," which uses the pitch shed and scenic views of the Appalachian Trail ridge. In 2020, Landowner officiated approximately 80 weddings at her Property because many traditional wedding venues closed due to the COVID-19 pandemic. Landowner advertises her services on the internet and provides a fee schedule for her officiant services, the use of the Property, and options such as catered post-ceremony dinners/receptions at the Property. Landowner testified that she limits attendance to events conducted at her Property to no more than 20 persons. Ceremonies can last up to 90 minutes, followed by an additional four hours for receptions. F.F. Nos. 4, 7-9, 20-23.

Landowner testified that normally only four vehicles park on the street for various events held at her Property. However, she admitted that the number of vehicles increased during COVID-19 because of social distancing. In May 2020, the Township septic enforcement officer determined that the Property needed a new septic system with a carbon filter based on a malodor detected. F.F. Nos. 24-26.

Neighbor testified that she was annoyed by Landowner's use of off-street parking for her events, which included stretch limousines, buses, and catering vehicles from spring to late fall. Neighbor testified that commercial use is not permitted under the Ordinance or the restrictive deed covenants. Neighbor further testified that her home is built on a bedrock outcrop with limited space for a suitable well and septic. Neighbor expressed concern that excessive use of Landowner's septic system on a regular basis could cause a second system malfunction jeopardizing Neighbor's well. F.F. Nos. 28-30; *see* R.R. at 139a-141a.

The Board found that Landowner's use of the Property as a wedding venue constituted the provision of "personal services," which is not permitted in the S-1 District. The Board rejected Landowner's claim that the use constituted an

4

accessory use. The Board found that a wedding venue use is not customarily incidental to the permitted residential use because it impacts neighbors in a manner that contradicts the fundamental purpose of the S-1 District. The Board also rejected Landowner's claim that the zoning restriction places a substantial burden on her religious exercise. The Board concluded that the Ordinance and the enforcement proceeding were neutral under the RLUIPA, making no distinction between religious and nonreligious assembly. Thus, the Board upheld the enforcement notice.

Landowner then appealed to the trial court, which affirmed, without taking additional evidence. This appeal now follows.[2]

## II. Issues

Landowner raises four issues on appeal. First, Landowner contends that the Board erred or abused its discretion by applying the Ordinance's definition of "personal services" in an improperly restrictive manner to prohibit her use. Second, she contends that the Board compounded its error by labeling Landowner's services as that of a "wedding celebrant" or "wedding officiant" and the Property as a "wedding venue" when none of those terms appear in the Ordinance. Third, she claims that the Board's decision places an undue burden on her religious freedoms in violation of the RLUIPA. Fourth, she asserts that the Board falsely characterized Neighbor's testimony as "uncontradicted" and improperly considered Neighbor's

_____

[2] Where the trial court does not take additional evidence, our review is limited to determining whether the Board committed an error of law or an abuse of discretion. *Victory Gardens, Inc. v. Warrington Township Zoning Hearing Board*, 224 A.3d 1110, 1114 n.4 (Pa. Cmwlth. 2020). The Board "abuses its discretion only if its findings are not supported by substantial evidence. Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations and citations omitted).

5

testimony regarding issues not before the Board, including possible future sewage issues and a restrictive deed covenant.

### III. Discussion
### A. "Personal Services"

First, Landowner contends the Board erred or abused its discretion by determining that Landowner's use of the Property is prohibited under the Ordinance. To reach this conclusion, Landowner asserts that the Board interpreted the Ordinance in an overly restrictive manner by characterizing her use of the Property as "personal service." Landowner maintains that she is not performing services of the same general class or nature as those listed in the Ordinance as "personal services." Rather, Landowner advances that she is providing a "professional advisory service," which removes the use from the definition of "personal services."

To evaluate this claim, we must interpret the language of the Ordinance. This presents a question of law for which our standard of review is *de novo* and our scope of review is plenary. *Slice of Life, LLC v. Hamilton Township Zoning Hearing Board*, 207 A.3d 886, 898 (Pa. 2019).

The general rules of statutory construction apply to the interpretation of zoning ordinances. *Slice of Life*, 207 A.3d at 899. The primary objective of statutory construction in this context is to determine the intent of the governing body that enacted the ordinance. Section 1921(a) of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. §1921(a). Generally, an ordinance's plain language provides the best indication of this legislative intent, and as such, ordinance interpretation begins with examination of the text itself. *See* 1 Pa. C.S. §1921(b). When reading the plain text of an ordinance, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage."

6

1 Pa. C.S. §1903(a); *City of Hope v. Sadsbury Township Zoning Hearing Board*, 890 A.2d 1137, 1143-44 (Pa. Cmwlth. 2006). Where a term is undefined, we may consult dictionary definitions for guidance. *THW Group, LLC v. Zoning Board of Adjustment*, 86 A.3d 330, 336 (Pa. Cmwlth. 2014).

An ordinance must be "construed, if possible, to give effect to all its provisions" so that no provision is mere surplusage. 1 Pa. C.S. §1921(a); *accord Commonwealth v. Ostrosky*, 909 A.2d 1224, 1232 (Pa. 2006). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. §1921(b). Thus, if the Court determines the ordinance provision at issue is unambiguous, it must apply it directly as written. *Bowman v. Sunoco, Inc.*, 65 A.3d 901, 906 (Pa. 2013); *see* 1 Pa. C.S. §1921(b).

However, when the statutory language is ambiguous, we may look to Section 1921(c) of the Statutory Construction Act for guidance. *Berner v. Montour Township Zoning Hearing Board*, 217 A.3d 238, 245 (Pa. 2019). Section 1921(c) provides:

> (c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
>
> (1) The occasion and necessity for the statute.
>
> (2) The circumstances under which it was enacted.
>
> (3) The mischief to be remedied.
>
> (4) The object to be attained.
>
> (5) The former law, if any, including other statutes upon the same or similar subjects.

7

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa. C.S. §1921(c). An ambiguity exists when language is subject to two or more reasonable interpretations, not merely because two conflicting interpretations may be suggested. *Roethlein v. Portnoff Law Associates, Ltd.*, 81 A.3d 816, 824 (Pa. 2013).

> Further, the presence of the term "include" or "including" in a definition
>
> exhibits a legislative intent that the list that follows is not an exhaustive list of items that fall within the definition; yet, any additional matters purportedly falling within the definition, but that are not express, must be similar to those listed by the legislature and of the same general class or nature.

*Department of Environmental Protection v. Cumberland Coal Resources, LP*, 102 A.3d 962, 976 (Pa. 2014); *but see Marcellus Shale Coalition v. Department of Environmental Protection*, 292 A.3d 921, 943-44 (Pa. 2023) (plurality) (favorably citing the foregoing excerpt, but generally rejecting application of *ejusdem generis* in statutory analysis in that case).

Indeed, Section 27-106(1)(B) of the Ordinance itself provides:

> Any list of permitted or prohibited uses shall not be deemed to be an exhaustive list but has been included for the purpose of clarity and emphasis, and to illustrate, by example, uses which are desirable (permitted, special or conditional uses) or undesirable (prohibited uses). Whenever the Zoning Officer or [] Board make[s] an interpretation of this chapter, then, unless other standards are in this chapter, the decision shall be made so that the results will not be contrary to the spirit and purpose of this chapter or injurious to the surrounding neighborhood.

*See* R.R. at 379a.

8

Finally, a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference from a reviewing court. *Slice of Life*, 207 A.3d at 902. "Such deference is appropriate because a zoning hearing board, as the entity charged with administering a zoning ordinance, possesses knowledge and expertise in interpreting that ordinance." *City of Hope*, 890 A.2d at 1143. Notwithstanding, "where doubt exists as to the intended meaning of the language written and enacted by the governing body," it must be resolved in favor of the landowner and the least restrictive use of the land. Section 603.1 of the Pennsylvania Municipalities Planning Code (MPC)[3]; *accord Slice of Life*, 207 A.3d at 899.

Guided by these principles of statutory construction, we examine the Ordinance and the parties' proffered interpretations of "personal services." To begin, the purpose of the S-1 District

> is to preserve open space, agriculture, steep slopes, wetlands, scenic viewpoints and other unique and aesthetic environmental features. To provide for the continuation and protection of large lot residential development and rural residential character with on-lot water and sewage facilities. Outdoor recreational facilities and uses would be compatible with the character of this District.

Section 27-302(2) of the Ordinance; R.R. at 227a. "Personal services" are not permitted in an S-1 District but are allowed as permitted or conditional uses in the commercial districts. Schedule 27-I of the Ordinance; R.R. at 234.

Section 27-202 of the Ordinance defines "personal services" as: "Places primarily providing services oriented to personal needs[,] *which do not involve retail sales or professional advisory services. Personal services include barber and beauty shops, shoe repair shops, household appliance repair shops, and other similar*

---

[3] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10603.1.

9

*establishments.*"  R.R. at 225a (emphasis added).  As the trial court aptly observed, "[t]he common denominator of all the examples listed under personal services is that they are commercial locations where services are exchanged for profit."  Trial Court Op., 10/19/2021, at 5.  The other shared trait is that the services are tailored to the personal needs or desires of the clients.

Here, although Landowner is not providing any of the enumerated services, the list is not exhaustive.  Landowner is providing a service, which she describes as "celebrant services" or "officiant services," for a profit.  R.R. at 62a, 65a.  Landowner explained that she works with her clients to create a custom ceremony.  *Id*. at 63a.  On the day of the wedding, Landowner performs the ceremony and offers the use of her Property for the ceremony.  *Id*. at 63a, 65a.  Such services are similar to those listed in that they are based on the intellectual or manual services of the provider rather than a physical, salable product, and they are oriented to a client's personal needs.  We agree with the Board's assessment that Landowner's service is of the same general class or nature.

Notwithstanding, Landowner argues that she is providing a "professional advisory service," which is expressly excluded from the definition of "personal services."   The Ordinance does not define "professional advisory services."  "Advisory" means "[c]ounselling, suggesting, or advising . . . ."  Black's Law Dictionary 54 (6th ed. 1990); *accord* Merriam-Webster's Collegiate Dictionary 59 (9th ed. 1987).  According to common everyday usage, "professional advisory services" refers to a profession in which advice is given.

Landowner describes herself as a "spiritual advisor."  Appellant's Brief at 20.  According to Landowner, she guides couples in advance of their wedding to craft a special ceremony, which may include personal vows, readings, music

10

selections, and more. As an ordained minister, Landowner may even provide premarital counseling.

However, Landowner's services do not end there. As Landowner's own testimony demonstrates, Landowner performs the actual ceremony, completes the couple's marriage license, and uses her Property for the ceremony and accompanying festivities, including the option of a small reception for up to 20 guests. R.R. at 63a-64a. Landowner's services go beyond "professional advisory services" and are more akin to the examples included under "personal services." To further illustrate, barber or beauty shops do not just provide advice to their clients regarding the best haircut or style, they also actually provide a haircut or style. An appliance repair person does not just offer recommendations on appliance maintenance and repair, but also fixes the appliance. In the same way, Landowner does not just provide spiritual or matrimonial advice to her clients, but also provides them with the attendant ceremonial services. We, therefore, conclude that the Board did not err in its interpretation of the Ordinance and its determination that Landowner's services are "personal services," which are not permitted in the S-1 District.

### B. Wedding Services

Next, Landowner argues that the Board erred or abused its discretion by labeling Landowner's use and profession with terms that are not defined in the Ordinance, including "wedding venue," "wedding celebrant," and "wedding officiant," to advance its interpretation of "personal services." Landowner maintains that she is not operating a "wedding venue" on her Property. Landowner officiates different ceremonies at the Property, not just weddings. Landowner does not market the Property as a "wedding venue." There is no signage outside the Property

identifying it as a "wedding venue." Unlike traditional wedding venues, the Property is not open to the public. In addition, Landowner is the only individual providing celebrant services at the Property, whereas a traditional wedding venue would never grant exclusive rights to just one minister. Further, the act of officiating wedding and other ceremonies at a single-family dwelling does not alter or change the character of that single-family dwelling to some other use. Landowner asserts that her wedding-related services are similar in character to a homeowner inviting approximately 20 guests to a dinner party, an outside barbecue, a graduation party, or similar events at a residence.

A "wedding venue" is commonly understood to mean a place where weddings and similar ceremonies and celebrations are held. It may be a formal location like a hotel, estate, or banquet center that provides various services and amenities, or a casual location like a backyard, beach, or field that may not have any facilities or staff. The Board's description of Landowner's use of her Property as a "wedding venue" is appropriate because Landowner officiates weddings there. R.R. at 65a, 86a.

As for the description of Landowner's services, Landowner describes her services as "celebrant services" or "officiant services" for weddings and other celebrations. R.R. at 62a, 65a. The fact that Landowner's services are not limited to weddings does not negate the Board's characterization of her services as wedding-related. Although we recognize that Landowner's services are similar in character to a homeowner inviting approximately 20 guests to a dinner party or other event, the frequency and intensity of the use combined with the for-profit fee structure are distinguishing. Thus, we discern no Board error in this regard.

## C. RLUIPA

Next, Landowner contends that her use of the Property is protected by the RLUIPA. The RLUIPA protects land use as a religious exercise by prohibiting the implementation of a land use regulation in a manner that places a substantial burden on the religious exercise of a person. It also precludes the imposition of a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution. Landowner argues the Ordinance, as enforced, imposes a substantial burden on her right of religious assembly and treats nonreligious assemblies more favorably.

With regard to substantial burden, Section 2000cc(a)(1) of the RLUIPA provides:

> (1) GENERAL RULE
>
> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—
>
> (A) is in furtherance of a compelling governmental interest; and
>
> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §2000cc(a)(1).

With regard to equal terms, Section 2000cc(b) of the RLUIPA provides: "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. §2000cc(b). To meet the equal terms provision,

a RLUIPA plaintiff must show that it was treated less well than a similar secular assembly or institution having a negative impact on the aims of the land use regulation similar to the negative impact on the religious assembly or institution. *Lighthouse Institute for Evangelism Inc. v. The City of Long Branch*, 510 F.3d 253, 266 (3d Cir. 2007).

Our review of the record does not support Landowner's assertion that the Ordinance or its enforcement places a substantial burden on her individual exercise of religion. Landowner appeared before the Board in her own personal capacity, not as a representative of the Universal Brotherhood Movement, Inc., and presented no testimony that a religious institution is burdened by the Ordinance. Further, Landowner offered no testimony or other evidence that she must host clients and up to 20 guests as a condition to the exercise of her religious faith. As Landowner herself admitted, religion is a non-essential component to her officiant services. R.R. at 72-73a. Landowner testified that she performs religious and nonreligious ceremonies and does not encourage or endorse any particular religious belief. *Id.*

As for Landowner's equal terms argument, there is no evidence in the record nor any distinction in the Ordinance that treats religious assembly or expression on less than equal terms with nonreligious assembly or expression. Rather, the Ordinance simply prohibits personal services in the S-1 District and applies to religious and nonreligious assembly alike. Thus, we conclude that the Board did not err in determining that the Ordinance was neutral and did not violate the RLUIPA or otherwise infringe upon Landowner's religious freedoms.

14

## D. Neighbor's Testimony

Finally, Landowner contends that the Board erred by considering portions of Neighbor's testimony that were immaterial and had no bearing on the proceedings. Neighbor voiced general concerns over potential sewage issues on the Property and asserted the existence of a restrictive covenant, neither of which were matters raised in the enforcement notice. Further, the Board abused its discretion by characterizing Neighbor's testimony as "uncontradicted" where Landowner introduced six letters from other neighbors saying that they were undisturbed by traffic or noise as a result of her wedding business.

The formal rules of evidence do not apply in Board hearings, "but irrelevant, immaterial, or unduly repetitious evidence may be excluded." Section 908(6) of the MPC, 53 P.S. §10908(6). With regard to Neighbor's testimony, the Board found:

> 28. Adjoining owner [Neighbor] of 5333 Hickory Circle, while speaking respectfully for [Landowner] as a neighbor and for [Landowner's] "lovely home," stated that street parking, including stretch limousines, buses and catering vehicles line Hickory Circle "solid with cars from spring until late fall . . . and is annoying."
>
> 29. [Neighbor] stated that she believed the [P]roperty had been converted to commercial use not permitted by zoning or deed restrictions for Hickory Valley Farm.
>
> 30. [Neighbor] further testified that her adjoining home is built on a bedrock outcrop with limited space for a suitable well and septic and that she feared excessive use of [Landowner's] septic system on a regular basis threatens to again cause a system malfunction and threatens to contaminate [Neighbor's] well.

F.F. Nos. 28-30; *see* R.R. at 139a-141a. The Board credited Neighbor's "uncontradicted testimony of traffic volume and on-site sewage volume generated by

[Landowner's u]se." Board Op., Conclusion of Law (C.L.) No. 7. The Board concluded that such "land use impacts" are "not compatible with surrounding residential uses, and not normally associated with a residential use." C.L No. 7.

Upon review, Landowner did not object to Neighbor's testimony. *See* R.R. at 139a-41a. Consequently, Landowner waived any challenge to Neighbor's testimony. *See Commonwealth v. Baumhammers*, 960 A.2d 59, 73 (Pa. 2008) (holding "it is axiomatic that issues are preserved when objections are made timely to the error or offense[]").[4] Notwithstanding, Neighbor's testimony regarding sewage concerns and restrictive covenant was not contradicted; only her testimony regarding traffic and noise was. *See* R.R. at 191a-97a. Neighbor's testimony regarding sewage concerns was relevant in ascertaining whether Landowner's use otherwise qualified as an accessory use.

As for Neighbor's testimony regarding restrictive covenant, we agree that it was irrelevant because the issue before the Board was whether Landowner's use of the Property was permitted in the S-1 District and not whether it was precluded by restrictive covenant. Nevertheless, because Neighbor's testimony ultimately had no bearing on whether Landowner's services constituted "personal services" under the Ordinance, Landowner was not duly prejudiced by the Board's consideration of this testimony. Any purported error in this regard is harmless because it does not affect the outcome of the appeal. *See Garner v. Pennsylvania Human Relations Commission*, 16 A.3d 1189, 1200 (Pa. Cmwlth. 2011) ("[R]eversible error requires the determination

---

[4] *See also Harrisburg Gardens, Inc. v. Susquehanna Township Zoning Hearing Board*, 981 A.2d 405, 415 (Pa. Cmwlth. 2009) ("[A]ny objection to the testimony and evidence received after that point has been waived. A party cannot gain advantage by making a hasty retreat from the hearing room. As noted above, a party who fails to raise an issue before a municipal zoning hearing board is precluded from doing so for the first time on appeal.") (citations omitted).

16

'must not only be erroneous, but also harmful or prejudicial to the complaining party.' *D.Z. v. Bethlehem Area School District*, 2 A.3d 712, 726 (Pa. Cmwlth. 2010).").

## IV. Conclusion

For these reasons, we conclude that the Board did not err in its conclusion that Landowner's use was not permitted in the S-1 District. Accordingly, we affirm the order of the trial court.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alisa Tongg Weiler,              :
                                 :
              Appellant          :
                                 :
       v.                        : No. 1303 C.D. 2021
                                 :
Stroud Township Zoning           :
Hearing Board and                :
Stroud Township                  :

# **O R D E R**

AND NOW, this 3rd day of August, 2023, the order of the Monroe County Court of Common Pleas, dated October 19, 2021, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge