**In Re: The appeal of John R. SCHIE-BER, Jr. and William Schieber, from the decision dated July 5, 2005, of the Borough Council of the Borough of Hatboro.**

**Appeal of: John R. Schieber, Jr. and William A. Schieber.**

Commonwealth Court of Pennsylvania.

Argued June 13, 2007.

Decided July 6, 2007.

Marc D. Jonas, Blue Bell, for appellants.

Adrian L. Meyer, Doylestown, for appellee.

BEFORE: FRIEDMAN, Judge, COHN JUBELIRER, Judge, FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

John R. Schieber, Jr. and William Schieber (collectively, Appellants), appeal from the decision of the Montgomery County Court of Common Pleas (trial court) which denied Appellants' appeal and sustained the decision of the Borough Council of Hatboro (Borough Council) which denied Appellants' substantive validity challenge and proposed curative amendment to a portion of the Borough of Hatboro Zoning Ordinance of 1985 (Ordinance). We affirm.

Appellants are the owners of property (Property) located at 400 North York Road in the Borough of Hatboro (Borough), Montgomery County. The Property totals 5.937 acres on which there is a two-story brick dwelling and a brick garage. The Property is zoned R–3 Residential District, is located within the Pennypack Creek Watershed and is almost entirely within the Borough's Flood Plain Conservation District.

The Borough adopted a flood plain ordinance in 1973 pursuant to studies conducted and flood plain lines drawn by the Federal Emergency Management Agency,

Federal Insurance Administration (FEMA) as required by the National Flood Insurance Program. Section 501 of the flood plain ordinance defined and established the flood plain conservation district. Section 501.6 of the flood plain ordinance was established to include the following:

> Those areas subject to inundation by the waters of the 100 Year Flood as delineated in the Flood Insurance Study (FIS), January, 1990 for the Borough of Hatboro, Montgomery County, Pennsylvania, as prepared by the Federal Emergency Management Agency, Federal Insurance Administration. Said floodplains shall be comprised of two (2) subdistricts as follows....

The Borough thereafter adopted Borough Ordinance No. 945, which was enacted in June of 2003, and changed Section 501.6, as follows:

> Those areas subject to inundation by the waters of the 100 Year Flood as delineated in the Flood Insurance Study (FIS), dated December 19, 1996, **and does not include any amendments,** for the Borough of Hatboro, Montgomery County, Pennsylvania, as prepared by the Federal Emergency Management Agency, Federal Insurance Administration. Said flood plains shall be comprised of two (2) subdistricts as follows.... (Emphasis added).

Appellants submitted a private study to FEMA which justified a change in the flood plain boundary for Property. FEMA, thereafter, issued a Letter of Map Revision (Revision), which became effective July 7, 2003. The Revision altered the boundaries to exclude the Property from the flood plain.

On October 5, 2004, Appellants filed a request for a hearing challenging the validity of Ordinance No. 945 and submitted a curative amendment pursuant to Section 609.1 of the Pennsylvania Municipalities Planning Code (Code), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10609.1, added by Section 10 of the Act of June 1, 1972, P.L. 333, which provides in pertinent part as follows:

> (a) A landowner who desires to challenge on substantive grounds the validity of a zoning ordinance or map or any provision thereof, which prohibits or restricts the use or development of land in which he has an interest may submit a curative amendment to the governing body with a written request that his challenge and proposed amendment be heard and decided....

Appellants' challenge alleged that the present zoning is inapplicable due to the fact that the Borough's flood plain ordinance, as amended by Ordinance No. 945 applies only to "amendments" to the flood plain map and not to revisions, that the Borough's enactment of Ordinance No. 945 was unreasonable, arbitrary and not substantially related to the Borough's police power interest, that the Borough's enactment of the challenged portion of Ordinance No. 945 constitutes illegal spot zoning, and that the Borough may not rely upon the unpublished Temple University's Center for Sustainable Communities Study of the Pennypack Creek Watershed (Temple Study) as justification for enactment of Ordinance No. 945.

The Borough Council heard testimony, reviewed Appellants' proposed plans, the Revision, and Ordinance No. 945 and determined that "there was no evidence to substantiate that zoning Ordinance 945 which defines the flood plain which is applicable to all of Hatboro is illegal." Borough Council Decision, July 5, 2005, at 18. The Borough Council found that it was in the best interest of the health and welfare of the Borough and its citizens to refuse to accept the Revision as establishing the

flood plain boundary and acted pursuant to Ordinance No. 945 in determining that the Property was within the flood plain boundary per the 1996 FEMA study. Appellants appealed to the trial court. The trial court did not accept any new evidence, reviewed the record and affirmed the Borough Council's determination. Appellants now appeal to our court.[1]

■■■ Initially, before addressing the merits of this case, we have before us an application for relief in which Appellants request a remand for additional evidence to be taken. Section 1005–A of the Code, 53 P.S. § 11005–A provides in pertinent part as follows:

> If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence.... If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence.

In questioning whether additional evidence is to be permitted under this section our court has determined that:

> A court of common pleas faces compulsion to hear additional evidence in a zoning case only where the party seeking the hearing demonstrates that the record is incomplete because the party

was denied an opportunity to be heard fully, or because relevant testimony was offered and excluded.

*Danwell Corporation v. Zoning Hearing Board of Plymouth Township*, 115 Pa. Cmwlth. 174, 540 A.2d 588, 590 (1988), *petition for allowance of appeal denied*, 520 Pa. 620, 554 A.2d 511 (1988).

Appellants argue that a remand for additional evidence is necessary due to their belief that the Temple Study, which the municipality allegedly relied upon in rejecting the Appellants' validity challenge, is now complete. The Borough counters that the Temple Study is not complete, as it is only in draft form. The Borough further states that it plans to review the study once it is complete, possibly in 2008 or 2009. Appellants have failed to prove that the study is complete, or that remand would alter the trial court's decision in any manner. We find that the record is sufficient for effective review before our court. Accordingly, we deny Appellants' request for a remand to take additional evidence.

Before our court, on the merits, Appellants contend: (1) that the Borough abused its discretion and erred as a matter of law by unreasonably enacting Ordinance No. 945, an ordinance that relies on a 1996 FEMA map, but disallows any amendments or revisions approved by FEMA; (2) that the Borough's enactment of Ordinance No. 945 constitutes illegal spot zoning by targeting Appellants' property and including it in the Borough's floodplain despite scientific data that conclusively demonstrates that the 1996 FEMA map is less accurate; (3) that the Borough abused its discretion and erred as a matter of law by relying upon the Temple Study, an unpublished, unauthenticated text, as justi-

---

1. Where, as here, the trial court does not take additional evidence, our review is limited to determining whether the Borough Council committed an error of law or abused its discretion. *Ruf v. Buckingham Township*, 765 A.2d 1166 (Pa.Cmwlth.2001).

fication for enactment of Ordinance No. 945; (4) that the Borough's floodplain ordinance as amended by Ordinance No. 945, is applicable only to "amendments" to the floodplain map and not revisions; and (5) that the Borough's Ordinance No. 945 is "special legislation" intended to prevent Appellants from developing their property.

■ First, Appellants contend that the Borough abused its discretion and erred as a matter of law by unreasonably enacting Ordinance No. 945, an ordinance that relies on a 1996 FEMA map, but disallows any amendments or revisions approved by FEMA. Specifically, Appellants contend that Ordinance No. 945 is not substantially related to the Borough's police power.

Section 500 of the Ordinance sets forth the legislative intent of the Borough in enacting the Ordinance. Section 500.1 of the Ordinance provides that, among other things, the Borough's intent was to "promote the general health, welfare and safety of the Borough...." The Federal Government, through FEMA, requires the Borough to adopt a flood plain ordinance to protect its citizens. Section 204 of the Flood Plain Management Act (Act), Act of October 4, 1978, P.L. 851, *as amended*, 32 P.S. § 679.204, provides in pertinent part as follows:

> The flood plain management regulations adopted by a municipality in order to comply with the requirements of the National Flood Insurance Program shall be deemed minimum standards for the management of the flood plains, and no provision of this act shall be construed

as in any way limiting the power of any municipality to adopt more restrictive ordinances, codes or regulations for the management of flood plains.

Thus, the Borough must adopt an ordinance that meets the minimum requirements set forth by the National Flood Insurance Program. However, it may also adopt a more restrictive ordinance, as it did here. The Borough's Ordinance No. 945 merely requires that a new ordinance be adopted in order to make changes to the flood plain and that amendments to the state and federal regulations will not automatically result in a change to the Borough's Ordinance. This action by the Borough was within its police powers.[2]

■ Second, Appellants contend that the Borough's enactment of Ordinance No. 945 constitutes illegal spot zoning by targeting Appellants' Property and including it in the Borough's flood plain despite scientific data that conclusively demonstrates that the 1996 FEMA map is less accurate than the private study Appellants had performed. The Borough has adopted flood plain lines that affect all properties adjacent to streams. The Borough may make changes to its flood plain map as it sees fit. The record reflects that the Borough Council did not find Appellants' Revisions more accurate than the flood plain map used previously. We note that it is irrelevant whether Appellants' Revision was more accurate, as the Borough has the option of adopting a more restrictive flood plain map to protect its citizens.

---

2. Appellants cite *Zoning Hearing Board of Willistown Township v. Lenox Homes, Inc.*, 64 Pa.Cmwlth. 74, 439 A.2d 218 (1982), and contend that therein our court "struck down a floodplain regulation prohibiting buildings within 100 feet of the high water mark of a stream, lake, or similar body of water." Appellants' brief at 14. We note, however, that our court determined that "the board made

no finding that the land was within any flood plain; the evidence in the record confirms that it was not." *Lenox Homes*, 439 A.2d at 222. Appellants have misstated our court's findings in *Lenox Homes*. Our decision in *Lenox Homes* does not apply to the present controversy, as the Property in the present controversy is within a flood plain.

Appellants allege that Ordinance No. 945 was enacted due to their request to change the flood plain boundary. The Solicitor stated at a March 24, 2003 meeting that he had reviewed some studies which reduced the flood plain and moved it to the other side of the stream. He recommended that, if the Borough wanted to keep the flood plain as it existed at that time, then they needed to pass an ordinance to indicate that. This is not spot zoning. It is merely stating options to the Borough as to what they could do with the flood plain and any revisions/amendments that might be made to it.

Ordinance No. 945 does not arbitrarily single out the Property for different treatment. All property within the flood plain is treated equally. Appellants contend they are not in the flood plain and are therefore, treated differently than other property not in the flood plain. However, according to the current flood plain map in use by the Borough, Appellants' Property is in the flood plain, and thus treating the Property as if it were in the flood plain is proper.

Third, Appellants contend that the Borough abused its discretion and erred as a matter of law by relying upon the Temple Study, an unpublished, unauthenticated text, as justification for enactment of Ordinance No. 945.

A review of the record reveals that the Borough did not rely upon the Temple Study to justify its enactment of Ordinance No. 945. The Borough merely stated that once the Temple Study is complete, it will review it and possibly revise the flood plain map at that time. Ordinance No. 945 gives the Borough the option of not adopting any amendment or revision to the flood plain map until it deems it proper.

■ Fourth, Appellants contend that the Borough's flood plain ordinance as amended by Ordinance No. 945, is applicable only to "amendments" to the flood plain map and not revisions. FEMA recognizes a "Letter of Map Amendment" as a smaller change relating to an individual property which results in a letter being sent to the municipality that the specific property is no longer in the flood plain. A "Letter of Map Revision" covers a larger area and results in a physical change to FEMA's study or map. However, the effect on a local flood plain ordinance is the same. The local municipality can choose to amend or revise its maps, or not to amend or revise them.

■ The Borough Council was correct that, in this case, the words "amendment" and "revision" can be used interchangeably, as they both amount to changes made by FEMA to its map, not to the municipalities. The Borough Council was also correct in determining that Ordinance No. 945 was applicable to both amendments and revisions to the map. At present, a municipality is not required to adopt an amendment or a revision made by FEMA to its flood plain. An ordinance will not be ambiguous when taken as a whole and construed according to the rules of grammar and common usage, if it is sufficiently clear as to its meaning. *Borough of Pleasant Hills v. Zoning Board of Adjustment of the Borough of Pleasant Hills,* 669 A.2d 428 (Pa.Cmwlth.1995).

■ Finally, Appellants contend that the Borough's Ordinance No. 945 is "special legislation" intended to prevent Appellants from developing their property. A zoning ordinance is considered special legislation when it is enacted to prevent the lawful use of land permitted under the existing ordinance. *Commercial Properties v. Peternel,* 418 Pa. 304, 211 A.2d 514 (1965). As the ordinance stands, Appellants' request to revise the flood plain map by a letter of Revision is not permitted.

Regardless of Ordinance No. 945, FEMA's letter of Revision would not automatically alter the Borough's flood plain map. Appellants' land is within the flood plain according to the initial flood plain map. The adoption of Ordinance No. 945 is not special legislation, as this legislation merely keeps the current flood plain map as it is and permits alteration only upon a change in the ordinance. The Borough Council was correct when it determined that Ordinance No. 945 applies to all property in the Borough, and not just Appellants' Property.

Accordingly, we must affirm the decision of the trial court.

### ORDER

AND NOW, this 6th day of July, 2007 the request of John R. Schieber, Jr. and William A. Schieber for a remand for the taking of additional evidence is denied and the order of the Montgomery County Court of Common Pleas in the above-captioned matter is affirmed.