# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dennis P. Kissane, Rita Martin, : 
Suzanne Devore, Andrea Tiglio, : 
Andrew Tiglio, Howard I. Roe, : 
David C. Scares, Pat Bauer, Tracy : 
Palmieri, Shawn Corrello, Joyce : 
Wahlah, Angela Bidlack, Barbara : 
B. Gordon, Robert B. Gordon, Lance : 
Crow, David Eisenreich, and : 
Kenneth Spear, : 
                 Appellants : No. 314 C.D. 2015
                         : Argued: November 17, 2015
           v. : 
                         : 
Town Council of the Town of : 
McCandless : 
                         : 
           v. : 
                         : 
Wal-Mart Real Estate Business : 
Trust : 

BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[1]
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**            **FILED: February 18, 2016**

         In this land use appeal, Dennis P. Kissane, Rita Martin and 15 other property owners (Objectors) seek review of an order of the Court of Common Pleas of Allegheny County (trial court)[2] that dismissed their appeal from a decision

---

[1] This case was assigned to the opinion writer on or before January 31, 2016, when Judge Leadbetter assumed the status of senior judge.

[2] The Honorable Joseph M. James, Senior Judge, presided.

of the Town Council (Council) of the Town of McCandless (Town) approving applications for a subdivision plan (SP) and a preliminary and final land development plan (LDP) submitted by the Wal-Mart Real Estate Business Trust (Walmart). Objectors are homeowners in a residential district immediately adjacent to the proposed Walmart site.

Objectors contend the trial court erred or abused its discretion by affirming Council's approval of Walmart's SP and LDP applications where the proposed site is too small and Walmart's plans fail to comply with the applicable provisions of the Town's Zoning Code[3] with respect to required parking and stormwater controls. Objectors also argue the trial court erred or abused its discretion by denying their motion to present additional evidence. For the reasons that follow, we affirm.

## I. Background
## A. Generally

Walmart acquired equitable title to separate lots comprising approximately 30 acres situated at 555 Blazier Drive within a C-5 Commercial Residential District. Pursuant to the SP and LDP, Walmart intends to redevelop an aging commercial property originally built as a shopping center in the early 1980s. The shopping center included two large commercial buildings, comprising approximately 135,000 square feet. Originally, a K-Mart retail store occupied the larger structure (90,579 square feet). At the time Walmart filed its applications,

---

[3] See Title Three of the Township's Planning and Zoning Ordinance, Reproduced Record (R.R.) at 10a-255a.

2

Trader Horn, a general merchandise store, and Brewery Outlet, a beer distributor, occupied the larger structure. A Kroger grocery store originally occupied the now smaller structure (43,964 square feet). Walmart plans to demolish the existing structures and replace them with a 150,000 square-foot retail store with a grocery component (Supercenter), and two out-parcels that can be developed at a later date. Walmart's plans describing the proposed development were available for public review in the Town Hall from the date they were received on March 3, 2014. See Appellee Township's Br. at 4.

Walmart filed its applications for the LDP and SP in February 2014 and June 2014, respectively. Thereafter, three public meetings were held on Walmart's applications.

### B. Public Meetings

On July 1, 2014, Walmart presented the preliminary/final LDP and SP to the Planning Commission. Walmart's applications were advertised as action items in the Planning Commission's revised agenda. Reproduced Record (R.R.) at 304a. Walmart's public presentation included a slide show, drawings, and comments from Walmart's architects, engineers and counsel. See Comm'n Minutes,7/1/14; R.R. at 324a-29a. At that meeting, the Planning Commission also took public comment on the LDP and SP. Id.

On July 21, 2014, Walmart presented the LDP and SP to the Council's Zoning and Finance Committee (Zoning Committee) at its regularly scheduled meeting. The Zoning Committee is comprised of all members of Council.

3

Approximately 170 residents appeared at the meeting, of which 138, including several Objectors, signed in. At the meeting, which lasted five hours, the Committee accepted extensive public comment on the LDP and SP. See Zon. Comm. Minutes, 7/21/14; R.R. at 368a-73a.

On July 28, 2014, Council moved its regularly scheduled meeting to the Carson Middle School to accommodate interest in the Walmart project. Walmart made minor modifications to the LDP and SP based on comments from the Zoning Committee. See Council Minutes, 7/28/14; R.R. at 394a-98a. Council took more than five hours of public comment on all aspects of the applications. Ultimately, Council voted 5-2 to approve the SP and 4-3 to approve the LDP. Id.

At the July 28 meeting, Objectors, having less than a week's notice of Walmart's LDP and SP applications, requested a continuance of the proceedings in order to have their own experts review Walmart's applications and present their own case through legal counsel. Council denied Objectors' request.

**C. Land Use Appeal**

Thereafter, Objectors filed a land use appeal with the trial court challenging Council's approval of the LDP and SP. Essentially, Objectors alleged their due process rights were violated because: they did not have an opportunity to review the LDP and SP; they were denied an opportunity to have Walmart's applications reviewed by legal counsel or experts to determine their compliance with the Zoning Code and other applicable laws; they were not afforded an opportunity to present any legal case, supported by expert testimony, in opposition

4

to Walmart's applications; and, they were not provided a copy of the written decision approving the applications until the day before the expiration of the 30-day appeal period.  See Appellants' Land Use Appeal at ¶32; R.R. at 448a.

Objectors nonetheless believed Walmart's applications fell short of compliance with the Town's Zoning Code because Walmart's plans did not comply with the Zoning Code's requirements for traffic improvements under a legitimate traffic impact study.  Objectors further averred Council failed to require Walmart to establish it had the requisite real property interests for the improvements depicted in its plans.  Land Use Appeal at ¶35; R.R. at 449a.  However, without any meaningful opportunity to access Walmart's applications, Objectors could not "articulate with any specificity" the grounds upon which Council erred or abused its discretion in approving Walmart's applications.  Land Use Appeal at ¶36; R.R. at 449a.  A fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.  Plowman v. Plowman, 597 A.2d 701 (Pa. Super. 1991).

**D. Motion to Present Additional Evidence**

Objectors also filed a motion to present additional evidence, alleging they were not afforded an opportunity to do so before Council.  In their motion, Objectors, previously unaware of Walmart's plans for a McCandless store, alleged they had no particular reason to regularly monitor the Town's website or the Planning Commission's or Council's upcoming meeting agendas. Therefore, they were essentially denied an opportunity to obtain legal representation in order to meaningfully review Walmart's LDP and SP applications.

Furthermore, Objectors noted Council held no public *hearings* on Walmart's applications. Rather, Council held three public *meetings* in July 2014 and then approved Walmart's LDP and SP. As a result, Objectors assert they had no meaningful opportunity to determine whether Walmart's LDP and SP complied with the applicable standards in the Town's Zoning Code.

Therefore, Objectors requested, pursuant to Section 1005-A of the Pennsylvania Municipalities Code (MPC),[4] 53 P.S. §11005-A, that the trial court reopen the record and remand the case to Council for an evidentiary hearing in order to allow Objectors to present expert testimony and legal argument in opposition to Walmart's LDP and SP applications. Objectors further requested the trial court to direct Council to reconsider its decisions to approve Walmart's LDP and SP in light of the additional evidence presented.

**E. Walmart's Intervention**

Walmart intervened in Objectors' appeal and opposed Objectors' motion to present additional evidence. Walmart asserted Objectors were not denied due process under the MPC. The Town held three separate public meetings on Walmart's applications. Thus, Objectors had adequate notice of the LDP and SP applications under the MPC and the Town's Zoning Code. Neither the MPC nor the Zoning Code requires that the LDP or SP be subject to any additional process prior to Council approval.

---

[4] Act of July 31, 1968, P.L. 805, <u>as</u> <u>amended</u>, added by the Act of December 21, 1988, P.L. 1329.

6

## F. Denial of Motion to Present Additional Evidence

Following a hearing, the trial court made the following findings:

1. [Council] conducted two hearings on this matter and took over ten hours of testimony;

2. [Objectors] failed to state in their offer of proof what additional evidence they intended to offer;

3. Based on the Notice of Appeal filed and the motion to present additional evidence and the oral proof as to the content of the additional evidence, the Motion to Present additional evidence is denied.

4. [Objectors'] request for an immediate appeal is denied.

5. Parties shall file their briefs on the underlying [Land Use Appeal] within 45 days.

Tr. Ct. Order, 10/27/14, at 1-2; R.R. at 548a-49a.


## G. Denial of Land Use Appeal

In denying Objectors' land use appeal, the trial court rejected their claim that Walmart's 29-acre site is too small because the C-5 District requires a 30-acre *minimum site requirement*. The trial court observed that Section 1335.02(a) of the Zoning Code does not contain a minimum <u>site</u> requirement; rather, it provides: "A C-5 <u>District</u> must contain a minimum of 30 acres." R.R. at 168.1a (emphasis added). The C-5 District at issue here exceeds 30 acres; it is comprised of at least four parcels totaling more than 45 acres. Tr. Ct., Slip. Op, 1/28/15, at 3. Aside from Walmart's two parcels totaling 29 acres, there are two contiguous lots totaling another 15 acres. <u>Id.</u>

7

The trial court further determined Walmart's plan meets or exceeds the Zoning Code's requirements for front, rear and side yard buffer depths. Tr. Ct., Slip. Op., at 3. The 150,000 square foot Supercenter falls well within the 200,000 square foot limit in Section 1335.02(h) of the Zoning Code. See R.R. at 170a. Also, the building coverage, based on gross lot area is only 14.7%, well within the 25% requirement in Section 1335.02(k) of the Zoning Code. Id.

The trial court also rejected Objectors' argument that Walmart's plan does not provide for adequate parking. Section 1313.06(a) of the Zoning Code sets the standard for retail store parking at one space for every 150 square feet of gross floor area. R.R. at 33a. However, Section 1313.06(e) provides:

> Council may require or approve alternative design standards for off-street parking in response to unusual conditions such as attendant parking, indoor parking … or a clearly documented difference between expected parking and required parking spaces; provided any reduction in the number of required spaces so granted shall be offset by a reserved area for future installation of a like number of spaces to be so improved at the discretion of the Town.

Section 1313.06(e) of the Zoning Code; R.R. at 35a (emphasis added).

Here, Walmart provided a detailed parking evaluation based on similarly sized stores indicating that a ratio of 4.19 spaces per 1,000 square feet of gross build area would be sufficient. Walmart further demonstrated it could provide additional parking if needed. Therefore, the trial court determined Council properly approved Walmart's alternate parking plan for 624 spaces, with an additional 376 spaces in two reserve parking areas. Tr. Ct., Slip. Op., at 4.

8

The trial court further determined Walmart's stormwater plans comply with Article 913 of the Town's Streets, Utilities and Public Services Code (Utilities Code), which governs stormwater management. Id. at 4-5. Walmart also presented alternative stormwater plans in the event it needed to construct parking in the existing stormwater basins. Id. at 5.

Finally, the trial court rejected Objectors' argument that the Town erred in approving Walmart's plan because it fails to depict current Federal Emergency Management Agency (FEMA) flood mapping. In August 2014, the Town adopted a new ordinance governing Flood Plain Construction and Development Requirements. The new ordinance became effective in September 2014. However, the trial court rejected Objectors' claim that Walmart's failure to utilize the new FEMA maps invalidate Walmart's LDP and SP. To that end, the trial court noted the Town approved Walmart's plans months before the new ordinance became effective. Id. at 5.

Ultimately, the trial court observed, Council's approvals of Walmart's LDP and SP were supported by substantial evidence. Id. Moreover, Walmart's plans were reviewed and approved by the Town's various engineers, the Planning Commission, the Zoning Committee and Council. Therefore, the trial court determined Council properly approved Walmart's LDP and SP. Accordingly, the trial court denied Objectors' land use appeal.[5]

---

[5] Where the trial court takes no additional evidence, appellate review in a land development appeal is limited to determining whether the local governing body committed an error of law or an abuse of discretion. Whitehall Manor, Inc. v. Planning Comm'n of the City of Allentown, 79 A.3d 720 (Pa. Cmwlth. 2013).

## II. Issues

Objectors present three primary issues. They contend the trial court erred or abused its discretion in affirming Council's approval of Walmart's LDP and SP because Walmart's proposed site is too small. Objectors further assert the trial court erred or abused its discretion in affirming Council's approval of Walmart's LDP and SP where Walmart's plans fail to comply with the applicable provisions of the Town's Zoning and Utilities Codes with respect to parking requirements and stormwater controls. In addition, Objectors argue the trial court erred or abused its discretion by denying their motion to present additional evidence where they were denied a meaningful opportunity to develop a record in support of their opposition to Walmart's LDP and SP.

## III. Discussion

## A. Proposed Site

## 1. Argument

Objectors first contend Council erred in interpreting Section 1335 of the Zoning Code as requiring only that a C-5 District contain a minimum of 30 acres rather than a minimum lot size of 30 acres. Here, Objectors assert Walmart's proposed site is only 23.42 acres, much less than the 30-acre minimum requirement. Objectors note the Town recently amended Article 1335 in December 2013 by enacting Ordinance No. 1443, immediately prior to Walmart's submission of its LDP and SP. As written, Objectors assert, Ordinance 1443 appears to change the *lot* size requirement to a minimum zoning *district* size, no matter the size of any proposed development. Objectors maintain this provision is inconsistent with the lot size requirements for all other districts in the Zoning

Code. Further, none of the other 15 districts in the Zoning Code have either a minimum or maximum area requirement.

Objectors claim they are not challenging the validity of the 2013 amendments to Article 1335 of the Zoning Code.[6] Rather, Objectors assert Council's interpretation of Section 1335.02(a) of the Zoning Code is an absurd and unreasonable statutory construction under 1 Pa. C.S. 1922(a). Similar to statutes, the fundamental objective in interpreting a municipal ordinance is to determine the intent of the legislative body in enacting the ordinance. 1 Pa. C.S. §1921(a); Bailey v. Zoning Bd. of Adjustment of City of Phila., 801 A.2d 492 (Pa. 2002). Where the language of the ordinance is free from ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursing its spirit. 1 Pa. C.S. §1921(b).

Alternatively, when the language in an ordinance is not clear or explicit, the intent of the legislative body may be ascertained by considering, among other things, the object to be obtained, the prior version of the law, if any, the consequences of a particular interpretation, and, the legislative and administrative interpretations of the provision. 1 Pa. C.S. §1921(c). However, in reaching the proper interpretation of the ordinance, it is presumed that the

---

[6] Pursuant to Section 916.1 of the MPC, added by the Act of December 21, 1988, P.L. 1329, as amended, 53 P.S. §10916.1, a validity challenge to zoning ordinance or map must first be submitted to the ZHB as a substantive validity challenge or to the governing body as an application for a curative amendment. A validity challenge cannot be raised for the first time before a trial court. Dore v. Zoning Hearing Bd. of W. Norriton Twp., 587 A.2d 367 (Pa. Cmwlth. 1991).

11

legislative body did not intend a result that is absurd, unreasonable or incapable of execution. 1 Pa. C.S. §1922; Bailey.

Here, Objectors offer a number of reasons why Council's interpretation of Section 1335.02(a) is unreasonable or absurd. First, if a C-5 District in the Town contained less than 30 acres, it could not be commercially developed to any extent. However, there is no C-5 District in the Town with less than 30 acres. Therefore, Objectors assert, the requirement is superfluous.

Second, the Town's interpretation of Section 1335.02(a)'s 30-acre requirement is unreasonable or absurd because it does nothing to regulate the scale of development in relation to the size of the lot on which it is proposed. Therefore, Objectors assert, subject to the dimensional requirements of the Zoning Code, a developer may build as large and intense a development on as small a site as desired.[7]

Objectors further argue there is no cognizable reason why a C-5 District should have a minimum area requirement while none of the Town's other 15 districts include a minimum area requirement. To that end, Objectors assert the Town's amendment deleting the 30-acre lot size requirement is a transparent attempt to circumvent the rational zoning standards applicable in every other district in order to accommodate Walmart's undersized lot in the C-5 District.

---

[7] Section 1335(g) permits a building's maximum area to be 150,000 square feet. R.R. at 170a. Section 1335(h) permits maximum building square footage of 200,000 square feet. Id. Section 1335(k) provides that building coverage based on gross lot area shall not exceed 25%. Id.

Additionally, Objectors argue Walmart alternatively asserts it also complies with a 30-acre lot requirement because it holds equitable title to separate lots comprising approximately 30 acres. To the contrary, Objectors contend Walmart does not have anything that is close to 30 acres. Rather, Objectors claim Walmart's commercial site will contain a net lot area of only 23.3 acres, approximately 23% less than that required by a proper interpretation of Section 1335.02(a) of the Zoning Code.

Objectors also claim the Town's zoning officer, Bruce Betty (Zoning Officer), issued a June 2014 letter to Walmart indicating the project did not meet the Zoning Code's requirements. In his letter, Zoning Officer noted Walmart's proposed project had not received Council approval. See R.R. at 320a.

## 2. Analysis

Section 1335.01 of the Zoning Code defines the purpose a C-5 District as follows (with emphasis added):

> The purpose of a C-5 Commercial Residential District is to provide areas of mixed use development in a unified manner. It is desired to encourage innovation in development planning by allowing an intermixing of compatible commercial and residential uses in an integrated complex, and to effect conservation and more efficient use of available land and public services. Such developments should be subject to final site development approval by Council.

R.R. at 169a.

13

To begin our analysis, we note that a municipality may not withhold approval of a land development plan that conforms to its regulations; the municipality may not condition approval of a plan based upon a standard not contained in its regulations. Montgomery Twp. v. Franchise Realty Interstate Corp., 422 A.2d 897 (Pa. Cmwlth. 1980). With respect to Objectors' argument that Council and the trial court misinterpreted Section 1335.02(a) of the Zoning Code, it is well-settled that words of a statute may be considered ambiguous if they are capable of at least two reasonable interpretations. Bowman v. Sunoco, 65 A.3d 901 (Pa. 2013).

Here, however, the language of Section 1335.02(a) is clear and unambiguous. It states (with emphasis added): "A C-5 District must contain a minimum of 30 acres." R.R. at 169a. In the present case, the subject C-5 District is comprised of four lots totaling approximately 49.452 acres. See R.R. at 341a. This includes Walmart's two lots (Lot A: 23.42 acres and Lot B: 5.67 acres) totaling approximately 29.09 acres. Id.

We also observe that Objectors misrepresented that the 2013 amendments purportedly deleted a *lot* size requirement. To the contrary, the record indicates previous dimensional standards for a C-5 District, enacted in 1978, did not specify an individual *lot* size requirement. See R.R. at 168.1a ("gross area of 30 acres;" no mention of lot size). As such, there neither is, nor has been, since at least 1978, a minimum lot size requirement for individual parcels in a C-5 District.

14

As noted, the purpose of the district is to encourage innovative uses of property while taking into account conservation, efficient use of available land, and public services. To that end, the plain language of Section 1335.02(a) requires only the district itself be a minimum of 30 acres.

Further, rather than deleting existing dimensional requirements, Ordinance No. 1443 actually added stricter dimensional standards, including new landscaping and buffer yard requirements, maximum residential density requirements, and building square footage requirements. See Sections 1335.03-1335.06 of the Zoning Code; R.R. at 169a-71a.

We also reject Objectors' argument that a June 2014 letter from the Town's Zoning Officer (indicating Walmart's LDP had not yet received Council approval) essentially continued in effect. See R.R. at 320a. That municipal letter, required by the Department of Environmental Protection (DEP), indicated that Walmart's LDP did not receive Council approval *at that time*. Id.

As reflected by the record, Walmart obtained final approval of its LDP in July 2014 by a 4-3 Council vote. See Zoning Officer's July 29, 2014 letter to Walmart (pertaining to the LDP). R.R. at 400a-02a. Walmart also obtained final approval of its SP for a lot line revision in July 2014 by a 5-2 Council vote. See Zoning Officer's July 29, 2014 letter to Walmart (pertaining to the SP). R.R. at 403a.

For the above reasons, we discern no error or abuse of discretion on the part of either Council or the trial court in determining the unambiguous language in Section 1335.02(a) of the Zoning Code requires only that a C-5 District *itself* must be a minimum of 30 acres. Bowman; Franchise Realty. As such, the 30-acre requirement does not apply to individual lots within a C-5 District. Consequently, we reject Objectors' contention that Walmart's lot size is too small for development as planned.

## B. Parking and Stormwater Requirements
### 1. Parking
### a. Alternative Parking Standards
### i. Argument

Objectors contend Walmart's site simply does not have sufficient areas to provide the required number of parking spaces. They further assert Walmart failed to demonstrate it can meet the standards for an alternative parking scheme.

First, Objectors assert Section 1313.06(a) of the Zoning Code requires one parking space for every 150 square feet of gross floor area plus an additional one parking space for every 200 square feet of outdoor storage. R.R. at 33a. Given Walmart's 150,000 square-foot building, 1,000 parking spaces would be needed. However, Walmart's plan provides only 624 spaces, or 376 spaces (38%) less than what Section 1313.06(a) requires.

16

Objectors further contend Walmart does not qualify for any exceptions under Section 1313.06(e) of the Zoning Code, which provides (with emphasis added):

> Council may require or approve alternative design standards for off-street parking in response to unusual conditions such as attendant parking, indoor parking, interaction between different abutting uses in the same zoning district, or a clearly documented difference between expected parking and required parking spaces; provided any reduction in the number of required spaces so granted shall be offset by a reserved area for future installation of a like number of spaces to be so improved at the discretion of the Town.

R.R. at 35a.

Objectors first argue Council never enacted or approved any alternate design standards for off-street parking. Therefore, there are no such standards. Objectors assert Section 1313.06(e) permits the application only if the applicant competently demonstrates the existence of unusual conditions of the types specified. In short, Objectors argue the unusual conditions are a condition precedent to the alternative design standards; they are not themselves the alternative design standards.

To that end, Objectors maintain Council and the trial court conflated the term "unusual conditions" with "alternative design standards." Although it is the applicant's burden to establish unusual conditions, Objectors contend alternative parking standards must be established by legislative authority. Objectors note alternative parking standards might include: the types or size of

17

developments to which alternative parking might apply; the process for submission, review and approval of alternate plans; the necessary content of such plans; limits on the amount of parking reduction; and, such considerations as whether alternative parking may include off-site parking. Consequently, if the applicant can demonstrate its proposed development is subject to unusual conditions, then the proposed development may be able to gain approval of an alternative parking plan so long as the alternative parking plan meets the established alternative parking standards.

Here, Objectors argue Council neither enacted nor approved any alternative parking standards. Rather, Walmart attempted to establish "unusual conditions" by documenting a difference between "expected parking" and "required parking spaces." However, even assuming Walmart's documentation is competent, which Objectors assert it is not, Section 1313.06(e) of the Zoning Code does not permit Walmart, or any other applicant, to simply provide whatever amount of spaces it wants to provide. Moreover, Objectors assert, Section 1313.06(e) does not permit Council to sit quasi-judicially and decide the number of required spaces on an *ad hoc*, or case by case, basis.

In sum, Objectors assert Section 1313.06(e) lacks legislatively established uniform standards for alternative parking schemes. By comparison, the City of Pittsburgh provides uniform parking requirements for specific uses and rigorous standards for alternative parking. See R.R. at 256a-60a (Pittsburgh's off-street parking schedules). In other words, Objectors argue the Zoning Code's lack

18

of alternative parking standards improperly permitted Walmart to decide the number of required parking spaces it needs to provide.

## ii. Analysis

Section 1313.06(e) of the Zoning Code provides (with emphasis added) that "Council may require or approve alternate design standards for off-street parking in response to unusual conditions such as … a clearly documented difference between expected parking and required parking spaces; provided any reduction in the number of required spaces so granted shall be offset by a reserved area for future installation of a like number of spaces to be so improved at the discretion of the Town." R.R. at 35a. Aside from specifically described conditions, the plain language of Section 1313.06(e) indicates the Town provided for a reduced parking requirement where the applicant can show a clearly documented difference between its expected parking needs and the required number of parking spaces under the Zoning Code. Importantly, in such cases Section 1313.06(e) also requires that the applicant provide for reserved parking up to the Zoning Code requirement. R.R. at 35a.

Here, Walmart's traffic engineer, McMahon and Associates (Walmart's Traffic Engineer), presented a May 2014 parking evaluation memorandum to the Town's traffic engineer, Trans Associates (Town's Traffic Engineer). Walmart's parking evaluation included a study of peak parking demand at 19 similarly sized Walmart stores. See R.R. at 290a-93a. In its memorandum, Walmart's Traffic Engineer opined that the Zoning Code's requirement of 6.67 spaces per 1,000 square feet of was excessive and created "a sea of impervious

19

pavement and unused parking area ….” R.R. at 290a. Walmart's Traffic Engineer further opined, based upon the comparative evaluation, 4.19 spaces per 1,000 square feet of retail space would be adequate for the planned McCandless Walmart. R.R. at 290a-92a. This is more than the 4.0 spaces per 1,000 square feet of retail space typically required by a Walmart store to meet its anticipated parking demand. R.R. at 291a. As reflected by the study, maximum parking demand at any of the stores in the study never exceeded 3.85 spaces per 1,000 square feet. R.R. at 293a.

In response, the Town's Traffic Engineer indicated in a July 2014 letter that it concurred with the adequacy of Walmart's proposed parking ratio of 4.19 spaces per 1,000 square feet of retail space provided that additional parking could be provided if the need arose. See R.R. at 352a. The Town's Traffic Engineer noted the ratio of 4.19 spaces per 1,000 square feet of retail space exceeded the peak demand at any location in the study. Id.

Based on its parking needs study, which the Town accepted as credible, Walmart met the legislatively established condition in Section 1313.06(e) of the Zoning Code for a reduction in parking. It did so by establishing a clearly documented difference between its expected parking needs and the parking spaces required by the Zoning Code. In short, Walmart met the Section 1313.06(e) “either/or” requirement by establishing: (a) a lesser number of spaces are needed; and, (2) the existence of an area available for additional parking sufficient to meet the Zoning Code requirement.

20

Moreover, a calculation of expected parking needs based on the anticipated use of a new development would, by necessity, be site or development specific. Here, the plain language of Section 1313.06(e) permits an alternative parking design specific to this development, with a requirement for reserved parking spaces sufficient to meet the Zoning Code requirement, if they should be needed. Although the reduction in parking is development specific, it is based on the reasonably defined standard of expected actual parking needs. As such, Objectors' argument that Section 1313.06(e) is devoid of any uniform standards for alternative parking schemes fails.

## b. Unlawful Delegation of Legislative Power

### i. Argument

In a related argument, Objectors contend Council's approval of Walmart's alternative parking scheme, absent the application of legislatively established standards, constitutes an unlawful delegation of legislative power or *ad hoc* legislation. The prohibition against the delegation of legislative power requires that basic policy choices actually be made by the legislative body. William Penn Parking Garage, Inc. v. City of Pittsburgh, 346 A.2d 269 (Pa. 1975). The delegation doctrine serves two related purposes. Id. First, it insures that basic policy choices are made by duly authorized and politically responsible officials. Id. Second, it protects against the arbitrary exercise of unnecessary and uncontrolled discretionary power. Id. By providing standards to guide those to whom a legislative scheme is entrusted, the legislative body serves both purposes. Id. Such standards articulate the basic policy choices made and limit the exercise of discretion. Id.

21

Here, Objectors argue Council conflated the terms "standards" and "unusual conditions" in Section 1313.06(e) as if that provision intended to create *ad hoc* standards on a case by case basis. Objectors assert Section 1313.06(e) neither articulates any standards nor authorizes the creation or use of *ad hoc* or "case by case" standards.

## ii. Analysis

To constitute an adequate standard under the delegation doctrine, the standard itself need not be definite or precise. See <u>William Penn Parking Garage</u> (power to find a tax invalid if it is *unreasonable or excessive* upheld as a constitutional delegation of power); <u>Commonwealth v. Cherney</u>, 312 A.2d 38 (Pa. 1973) (authorization to Secretary of Highways to establish higher speed limits where *traffic or other conditions make it safe to drive faster* upheld as a constitutional delegation of power).

As discussed above, Section 1313.06(e) permits an alternative parking design based on clearly documented evidence of expected parking needs. In so doing, Section 1313.06(e) reflects a legislatively determined policy choice to permit a reduction in parking based upon an objective showing of *actual parking needs*. We find the "expected parking" language in Section 1313.06(e) to be an adequate standard upholding a basic policy choice by the Town to permit a reduction required parking spaces based upon documented analysis of anticipated

parking needs.  As such, it does not constitute an unlawful delegation of legislative power.[8]  <u>William Penn Parking Garage</u>.

### c. Variance Needed

### i. Argument

In another related argument, Objectors contend the Town may not deviate from the requirements in Section 1313.06(a) of the Zoning Code.  Rather, the Town's Zoning Hearing Board (ZHB) maintains exclusive jurisdiction to hear and render final adjudications over applications for variances from the terms of the zoning ordinance based on undue hardship and public interest concerns.  <u>See</u> Section 909.1 of the MPC[9] (ZHB has exclusive jurisdiction over applications for zoning variances).

Here, Objectors argue, absent any express legislative standards for granting Walmart a reduced number of spaces, Council circumvented the exclusive jurisdiction of the ZHB by granting Walmart's request for a reduced number of parking spaces under Sections 1313.06(e) based on expected parking needs.

---

[8] Again, we note a validity challenge to a municipal zoning provision cannot be raised for the first time in an appeal to a trial court.  <u>Dore</u>.  Although Objectors claim they are not challenging the validity of Sections 1313.06(e) of the Zoning Code, the nature of their arguments belies this claim.

[9] Added by the Act of December 21, 1988, P.L. 1329, <u>as</u> <u>amended</u>, 53 P.S. §10909.1.

### ii. Analysis

As noted, Section 1313.06(e) of the Zoning Code permits Walmart to submit an alternative parking design for its LDP based on a written analysis documenting a difference between Walmart's expected parking need of 4.19 per 1,000 square feet of gross floor area and the Zoning Code's requirement of 6.67 spaces per 1,000 square feet. Council's approval of Walmart's plan is consistent with the plain language of Section 1313.06(e) of the Zoning Code, which states "Council may … approve alternate design standards for off-street parking in response to unusual conditions such as … a clearly documented difference between expected parking and required parking spaces …." R.R. at 35a (emphasis added). Here, Council accepted Walmart's documentation that it needs only 4.19, not 6.67, parking spaces per 1,000 square feet of gross floor area.

In short, because Council approved an alternate parking standard for Walmart based on a documented difference between its expected parking needs and the Zoning Code's parking requirements, Council acted in accord with the plain language of Section 1313.06(e). As such, there is no need for Walmart to seek a variance from the Town's zoning requirements.

### d. Walmart's Parking Needs Analysis
### i. Argument

Objectors also contend Council erred or abused its discretion by relying on Walmart's documentation indicating its expected parking needs were nearly 40% less than what is required by the Zoning Code. In particular, Objectors claim Walmart's parking comparison study is invalid because it did not limit itself

to Supercenters (stores with a grocery department), especially Supercenters in western Pennsylvania or in comparably populated areas.

Objectors further claim Walmart's parking analysis is invalid because its parking studies covered just one weekday and one consecutive Saturday. Moreover, Objectors assert Walmart's study avoided the busiest December holidays for all but one of the 19 locations. Consequently, Objectors maintain Walmart's parking needs analysis is arbitrary at best and cannot establish a clearly documented difference between Walmart's parking needs and the requirements of the Zoning Code.

### ii. Analysis

As discussed above, Walmart's Traffic Engineer presented a May 2014 parking evaluation memorandum to the Town's Traffic Engineer. Walmart's parking analysis included a study of peak parking demand at 19 similarly sized Walmart stores. <u>See</u> R.R. at 290a-93a. Walmart's Traffic Engineer opined, based upon the comparative analysis, that 4.19 spaces per 1,000 square feet of retail space would be adequate for the planned McCandless Walmart. R.R. at 290a-92a. As reflected by the study, maximum parking demand at any of the stores in the study never exceeded 3.85 spaces per 1,000 square feet. R.R. at 293a.

Ultimately, the Town's Traffic Engineer, in a July 2014 letter, concurred with Walmart that 4.19 spaces per 1,000 square feet would be appropriate for the site as long as Walmart reserved an area for additional parking sufficient to meet the Zoning Code requirement. R.R. at 352a.

Council acted in accord with the plain language of Section 1313.06(e). Section 1313.06(e) affords Council a range of discretion to approve a required number of parking spaces tailored to site-specific conditions peculiar to each development. It is the function of Council as the fact-finder to determine the credibility of the witnesses and to weigh the evidence. Pohlig Builders, LLC v. Zoning Hearing Bd. of Schuylkill Twp., 25 A.3d 1260 (Pa. Cmwlth. 2011). This Court may not substitute its interpretation for that of the fact-finder. Id. (citing Taliaferro v. Darby Twp. Zoning Hearing Bd., 873 A.2d 807 (Pa. Cmwlth. 2005)).

### e. Garden Center; Outdoor Storage/Display

### i. Argument

Objectors further contend Walmart failed to account for parking required for its garden center and outdoor storage and display areas. Section 1313.06(a) of the Zoning Code requires one parking space for every 200 square feet of outdoor storage/display area. Objectors also assert Walmart failed to state that the outdoor storage/display areas used for gardening supplies actually diminish the number of available parking spaces. Thus, Objectors argue Walmart seriously under-calculated the number of required parking spaces, which will adversely affect Objectors' adjoining residential properties.

### ii. Analysis

Walmart's proposed 2,229 square-foot outdoor garden center area would, at most, require an additional 11 spaces under Section 1313.06(a) of the Zoning Code. See R.R. at 33a. As noted above, Council accepted Walmart's parking needs analysis indicating that maximum parking demand at any of the

26

stores included in the study never exceeded 3.85 spaces per 1,000 square feet. R.R. at 293a. Consequently, Walmart's planned parking ratio of 4.19 spaces per 1,000 square feet would easily cover an additional 11 spaces for garden center and outdoor display.

We also reject Objectors' assertion that Walmart's garden center and outdoor display area would actually diminish the planned parking spaces. Objectors cite nothing indicating Walmart intended to use available parking spaces for its garden center or outdoor display area. Rather, Objectors merely claim a Google Earth snapshot shows that a neighboring Walmart used available parking spaces for an outdoor display area. As such, Objectors' contention that Walmart's LDP fails to comply with the Zoning Code's parking requirements for outdoor storage/display lacks any cognizable merit.

### f. Reserved Areas for Future Parking Needs
### i. Argument

Objectors also contend Walmart failed to comply with the Section 1313.06(e) requirement that an applicant must offset any reduction in parking spaces "by a reserved area for future installation of a like number of spaces to be so improved at the discretion of the Town." See R.R. at 35a (emphasis added). More specifically, Objectors assert Walmart failed to identify a properly reserved area for future parking spaces because these areas are already devoted to stormwater detention basins: Basin No. 1 and Basin No. 2. Basin No. 1 is approximately 0.6 acres; Basin No. 2 is approximately 0.7 acres. Objectors argue Walmart cannot be permitted to propose a reserved parking area in a detention

27

basin because such designated areas cannot be improved into parking areas at the discretion of the Town. In other words, if the parking areas were constructed, this would eliminate the detention basins.

Objectors further assert Walmart would have to obtain approval from the Allegheny County Conservation District (County) in order to construct the alternative stormwater management plan referenced in its LDP. However, Walmart failed to obtain County approval for any alternative plan. Therefore, Objectors argue Walmart's LDP does not meet the requirements of the Town's Zoning Code.

### ii. Analysis

The record indicates the Town's stormwater engineers required Walmart to submit an alternative method of stormwater management in the situation where the basins would be needed for future parking. See R.R. at 350a (Item #10). In response, Walmart attached its calculations and plans for an alternative underground stormwater detention basin. See R.R. at 334a-40a.

Objectors contend this plan is invalid because Walmart needs County approval to construct an underground stormwater system. However, Objectors fail to cite any statutory or regulatory requirements Walmart failed to meet.

Section 913.201 of the Town's Streets, Utilities and Public Services Code (Utilities Code) recognizes that the Town is granted authority under the

28

Stormwater Management Act[10] to regulate stormwater activities within its boundaries. Regulated activities include (with emphasis added): land development and redevelopment, subdivision, construction of new buildings and the "[i]nstallation of stormwater management facilities or appurtenances thereto." Section 913.202.1 of the Utilities Code. Absent any allegation of a specific violation of a statutory or administrative provision, we reject Objectors' contention that Walmart's LDP and SP are invalid because Walmart failed to obtain County approval of its proposed alternative stormwater management plans.

As to the alleged failure of Walmart to comply with the Section 1313.06(e) proviso for reserved future parking, Objectors do not explain what part of the requirement has not been satisfied. That Section allows Council to approve alternate design standards for off-street parking

> provided any reduction in the number of required spaces
> so granted shall be offset by a reserved area for future
> installation of a like number of spaces to be so improved
> at the discretion of the Town.

Section 1313.06(e); R.R. at 35a.

We discern no abuse of discretion by Council. Clearly, there is a reserved area for the future installation of a number of parking spaces equivalent to the reduction allowed. The reserved area is open space. There is no express prohibition against also using the open space for stormwater detention. So long as the plans accommodate both available space reserved for future parking and

---

[10] Act of October 4, 1978, P.L. 864, as amended, 32 P.S. §§680.1-680.17.

approved alternate stormwater facilities if the open space is needed in the future, we cannot say that Council's decision was manifestly unreasonable, or the result of partiality, prejudice, bias or ill will. See Henderson v. Unemployment Comp. Bd. of Review, 77 A.3d 699 (Pa. Cmwlth. 2013).

## 2. Stormwater Requirements
### a. Current FEMA Flood Mapping
### i. Argument

Objectors next contend Council erred in approving Walmart's LDP because it fails to depict the most recent FEMA flood mapping. Current FEMA flood mapping for the site, last revised September 26, 2014, shows the 100-year flood area protruding significantly into Walmart's build area. See Appellants' Br., App'x. D-2. However, on Walmart's LDP, the 100-year flood area does not protrude into the build area. See Appellants' Br., App'x. D-1.

Objectors assert both the Town and Walmart were acutely aware of these changes. At the July 28, 2014 meeting, Zoning Officer stated that in 2011 the Town received notice that FEMA's flood maps were being revised. See R.R. at 390a-91a. Zoning Officer commented that the new maps provide a satellite view that will make it easier to identify flood plain areas. R.R. at 391a. Nevertheless, Council approved Walmart's LDP with conspicuously outdated flood mapping. As a result, Walmart is permitted to build within the 100-year flood plain area.

## ii. Analysis

Pursuant to Section 203 of the Flood Plain Management Act,[11] the adoption and administration of floodplain management regulations is governed by the MPC. Section 508(4) of the MPC provides that any change in a zoning, subdivision or governing ordinance or plan, while a LDP or SP is pending approval or disapproval, shall not adversely affect such application. 53 P.S. §10508(4). Rather, the applicant is entitled to a decision in accordance with the provisions as they stood at the time of application. Id.

Here, the new flood maps adopted by the Town were not revised and effective until September 2014. However, Walmart submitted its LDP and SP applications in February and June 2014. Further, the Town approved Walmart's LDP and SP in July 2014. Consequently, Walmart's plans depicted FEMA's flood maps at the time the applications were considered. As such, they were not invalidated by FEMA's September 2014 revisions. Section 508(4) of the MPC, 53 P.S. §10508(4).

## b. Stormwater Discharge

### i. Argument

Objectors further contend Walmart failed to account for a significant amount of stormwater routed from a planned basin located at the northeast corner of the site and routed to an existing basin at the eastern end of the site. Objectors assert this discharge is not accounted for in Walmart's stormwater models.

---

[11] Act of October 4, 1978, P.L. 851, as amended, 32 P.S. §§679.101 - 679.601.

### ii. Analysis

In the present case, PVE Sheffler (Town Stormwater Engineers) reviewed Walmart's stormwater management plans and calculations on four occasions. See R.R. at 294a, 328a, 321a, 366a. To that end, Council ultimately conditioned approval of Walmart's LDP upon Walmart's compliance with all items contained in Town Stormwater Engineers' latest review letters.

Furthermore, Objectors cite no record evidence supporting their assertion that Walmart's stormwater management plan is deficient or that it in any way runs afoul of the Town's stormwater regulations. To the contrary, Objectors assert they would have produced expert testimony on this subject if they would have been afforded an opportunity to do so. Given the lack of objective support for Objectors' contention that Walmart's plans failed to account for a significant amount of stormwater discharge, we conclude Objectors' argument lacks merit.

### C. Motion to Present Additional Evidence
### 1. Argument

Objectors also contend the trial court erred or abused its discretion in denying their motion to present additional evidence. Objectors claim the trial court unfairly denied them an opportunity to present their case on the record, and then rejected their arguments because they were not on the record.

First, Objectors assert Council failed to conduct public *hearings* and take testimony. Rather, Council merely held two public *meetings* at which public comment was permitted. Objectors maintain the distinctions between hearings

versus meetings, and testimony versus public comment, are enormous.  At no point did Council claim it held a public hearing on Walmart's applications.

Second, Objectors assert the trial court erred or abused its discretion in determining Objectors failed to indicate what additional evidence they intended to offer.  Objectors maintain they advised the trial court they intended to present evidence regarding: the size deficiencies of Walmart's site in a C-5 District; Walmart's failure to meet the parking and stormwater requirements; and, Walmart's failure to prove its development is outside of FEMA's flood areas.

Objectors contend a fully developed record is essential to adequately support these arguments.  In short, although Objectors could make these arguments, there is currently nothing in the record to support them.

Objectors also claim the trial court, in reviewing their land use appeal, failed to properly perform its decision-making function.  In particular, Objectors contend the trial court failed to adequately address their various arguments regarding: whether a proper interpretation of the language in Section 1335.02(a) requires that a C-5 Commercial District contain a minimum of 30 acres; whether Council properly approved Walmart's alternative parking plan under Section 1313.06(e) of the Zoning Code; or, whether Council failed to count the additional spaces required under 1313.06(a) of the Zoning Code for Walmart's outdoor storage and display area.  Rather, Objectors assert, the trial court merely determined that substantial evidence supports the Council's approvals without addressing the legal questions Objectors raised.  Therefore, Objectors argue the

33

trial court erred by failing to perform its decision-making function and render a legal judgment on these issues. A&L Invs. v. Zoning Hearing Bd. of City of McKeesport, 829 A.2d 775 (Pa. Cmwlth. 2003).

## 2. Analysis

Whether to permit the presentation of additional evidence in a land use appeal is a matter within the discretion of the trial court. Eastern Consol. & Distrib. Servs., Inc. v. Bd. of Comm'rs of Hampden Twp., 701 A.2d 621 (Pa. Cmwlth. 1997). Section 1005-A of the MPC, 53 P.S. §11005-A, affords the trial court the discretion to either hold a hearing to receive additional evidence or remand the case to the governing body or a special fact-finder.

The party seeking to present additional evidence bears the burden of demonstrating the governing body denied a party the opportunity to be fully heard. McGrath Constr. Co. v. Upper Saucon Twp. Bd. of Supervisors, 952 A.2d 718 (Pa. Cmwlth. 2008). In the absence of a demonstration that the record before the governing body was insufficient for effective review or that relevant testimony was offered and excluded, a request to present additional evidence may be denied. In re Schieber, 927 A.2d 737 (Pa. Cmwlth. 2007).

Notably, the MPC places virtually no procedural requirements on a governing body considering subdivision and land development proposals. Miravich v. Twp. of Exeter, 6 A.3d 1076 (Pa. Cmwlth. 2010). In fact, the MPC makes it clear that public hearings are not required. Whitehall Manor, Inc. v. Planning Comm'n of the City of Allentown, 79 A.3d 720 (Pa. Cmwlth. 2013).

Whitehall Manor is instructive. In that case, two objectors challenged the preliminary and final LDP and SP for the PPL Arena in Allentown, a project larger than the proposed Walmart at issue here. The governing body in Whitehall Manor issued the approvals approximately one month after the developer's application was filed and after a single public meeting.

Similar to the present case, the objectors in Whitehall Manor advanced a number of procedural arguments, including a hurried approval in a manner that prevented the objectors' meaningful participation. The objectors further alleged they received only two documents under the Right-to-Know Law (RTKL).[12] This Court, however, citing Miravich, found no due process violation because the governing body followed the procedures set forth in the MPC.

Similarly here, both the Town and Walmart complied with the requirements of the MPC, the Sunshine Act,[13] and the Town's Zoning and Utilities Codes. Walmart presented the preliminary/final LDP and SP to the Planning Commission on July 1, 2014 at a duly advertised public meeting. On July 21, 2014, Walmart presented the LDP and SP to the Council's Zoning Committee, which is comprised of all members of Council. Approximately 170 residents appeared at the meeting, of which 138, including several Objectors, signed in. The meeting lasted five hours; the Committee took extensive public comment on the LDP and SP. On July 28, 2014, Council moved its regularly scheduled meeting to the Carson Middle School to accommodate interest in the Walmart project.

---

[12] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[13] 65 Pa. C.S. §§701-716.

Council took more than five hours of public comments on all aspects of the applications.

Finally, we note the MPC does not require that a governing body allot time for residents to obtain trial counsel to review an LDP or SP, develop counter-expert testimony or prepare an evidentiary rebuttal case. Whitehall Manor. Rather, the General Assembly enacted Section 508 of the MPC to remedy indecision and protracted deliberations by local governing bodies, to eliminate deliberate or negligent action on the part of governmental officials and to assure that an unsuccessful applicant is provided with bases for appeal. Timothy F. Pasch, Inc. v. Springettsbury Twp. Bd. of Sup'rs, 825 A.2d 719 (Pa. Cmwlth. 2003). Having determined Objectors were not denied due process under the MPC, we discern no error or abuse of discretion by the trial court in denying Objectors' motion to present additional evidence.

In addition, we see no improprieties in the trial court's opinion and order denying Objectors' land use appeal. The trial court reviewed the unambiguous provisions of the Zoning Code at issue and determined Objectors' arguments were unsupported by either the law or the facts. To that end, the trial court reviewed and rejected each of Objectors' arguments.

## IV. Conclusion

For the above reasons, we discern no error in Council's approval of Walmart's SP and LDP.  Accordingly, we affirm the trial court's order denying Objectors' appeal.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dennis P. Kissane, Rita Martin, : 
Suzanne Devore, Andrea Tiglio, : 
Andrew Tiglio, Howard I. Roe, : 
David C. Scares, Pat Bauer, Tracy : 
Palmieri, Shawn Corrello, Joyce : 
Wahlah, Angela Bidlack, Barbara : 
B. Gordon, Robert B. Gordon, Lance : 
Crow, David Eisenreich, and : 
Kenneth Spear, : 
          Appellants : No. 314 C.D. 2015
           : 
       v. : 
           : 
Town Council of the Town of : 
McCandless : 
           : 
       v. : 
           : 
Wal-Mart Real Estate Business : 
Trust : 

## O R D E R

**AND NOW**, this 18th day of February, 2016, the order of the Court of Common Pleas of Allegheny County is **AFFIRMED**.

 

 

_____

ROBERT SIMPSON, Judge